### W. M. MILLS v. G. D. HARTZ.

No. 14,906. (94 Pac. 142.)

#### SYLLABUS BY THE COURT.

MINES AND MINERALS—*Lease—Forfeiture—Abandonment—Cancelation of Contract.* Under a lease of land for gas, oil or coal purposes the lessee was given the exclusive right to dig and bore for gas, oil or coal for a term of twenty years, and as much longer as any of these could be found in paying quantities; also the right of way on and over the land to explore and operate, including the right to erect buildings and appliances for procuring gas, oil or coal on the land and the right to remove all improvements and machinery when the land was abandoned or the lease had expired. The only consideration for the lease, aside from the technical one of one dollar, was a royalty of eight cents a ton on coal mined and fifty dollars per annum for the gas procured from each well, and sufficient gas to supply two stoves in the lessor's farmhouse. No grounds of forfeiture were specified. *Held,* in a suit to cancel the lease, that it contemplated early exploration and operation, and a failure on the part of the lessee to begin operations for a period of about seven years is equivalent to a surrender by the lessee and gave the lessor the right to treat the contract as abandoned.

Error from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed February 8, 1908. Affirmed.

*L. S. Harvey,* and *Frank M. Sheridan,* for plaintiff in error.

*E. J. Sheldon,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The cancelation of a lease was the purpose of this suit. On April 29, 1897, G. D. Hartz leased a tract of land to W. M. Mills "for gas, oil or coal purposes," giving him the "exclusive right to dig, bore and mine for gas, petroleum oil and coal" on the land for a term of twenty years and as much longer as gas, coal and oil were found in paying quantities.

Mills was given the right of way to and from any wells or mines dug or bored on the land, with the power to construct appliances thereon for mining purposes and the right to remove machinery from the land "when the same is abandoned or the lease expires." In consideration of the lease Mills agreed to pay one dollar and give a royalty of eight cents a ton on the coal mined, and, if gas should be found in paying quantities, to pay Hartz fifty dollars per annum for the gas obtained from each well, and also to provide sufficient gas to supply two stoves in his farmhouse. Mills never dug or bored for gas, oil or coal, nor made any development whatever upon the land; and, after the lapse of seven and one-half years, this suit was brought, in which Hartz alleged, as grounds for setting aside the lease, the failure to explore or develop the land to any extent, and, further, that Mills had never filed the lease for record with the register of deeds and had not listed it for taxation, as the statute requires. Upon the testimony produced the court found that the lease was not binding upon Hartz because of the abandonment of the same by Mills, and that it was void for the further reason that it had not been recorded within ninety days after its execution nor listed for taxation. Of these rulings Mills complains.

The single ground of abandonment is all that requires consideration. On the side of Mills it is contended that the lease did not provide for immediate or early exploration, but gave him twenty years to explore and develop; that it contained no conditions of forfeiture and did not contemplate a possible abandonment within the twenty-year period. On the other side it is contended that, although the lease contained no provision requiring development within a fixed time, it was granted upon an implied condition that the lessee should explore and develop within a reasonable time and that the failure to do so amounted to abandonment.

The lease is not a grant of land, nor of the oil, coal,

or gas in the land. It does not transfer any estate to Mills, and hence some of the rules which he invokes as to non-user and abandonment do not apply. Hartz granted him the possession of a part of the land, with the right to search for minerals, and gave him an interest in so much of the minerals as might be found and taken out; but, if none were found, no interest in the undiscovered mineral could be acquired by him, and certainly no estate in the land. (*Gas Co. v. Neosho. County,* 76 Kan. 335, 89 Pac. 750; *Huggins v. Daley,* 40 C. C. A. 12, 48 L. R. A. 320.) Having only the right to search for and procure gas, oil and coal, when must the search begin? Since the time for commencing the operation is not expressly stated, we must look to the terms of the lease and the subject of the contract to determine what was within the contemplation of the parties. We think the court rightly held that, under such a lease, it is the duty of the lessee to make a diligent search within a reasonable time. The only consideration moving to the lessor for the right which he gave to the lessee to explore and procure minerals was the royalty on the coal to be found and the fixed compensation for each well when gas should be found and utilized, together with sufficient gas to supply two stoves in his farmhouse. If there were no search, nor any product, no possible benefit could come to the lessor for the exclusive rights which had been given to the lessee. It is not easy to infer that the lessor intended to give a valuable right for a nominal consideration, and permit the lessee to retain the right for a period of twenty years without development, when development was the chief purpose in the execution of the lease. Neither the character of the right given nor the nature of the instrument admits of such an irrational interpretation. The lease contemplates that the lessee shall proceed to dig and bore for gas, oil and coal, and that the lessor shall obtain gas for his farmhouse, not twenty years hence, but as soon as it can reasonably be procured. It is contemplated, too, that

Mills v. Hartz.

the compensation for each gas-well shall be paid an-
nually and not at some remote period.

The case of *Bluestone Coal Co. v. Bell*, 38 W. Va.
297, 18 S. E. 493, involved the construction of a mining
lease given for ninety-nine years, no time being fixed
for the commencement of operations under it, and the
court held that the lease contemplated that the lessee
should begin operations within a reasonable time and
if he did not do so the lessor had the right to treat the
whole contract as abandoned.

The supreme court of Virginia, in speaking of a
similar lease given for twenty years, said:

"Yet, looking to its nature and object, it cannot be
contended that the lessees had the option to work or
not to work the ore mines for an indefinite time, and
thus convert what was designed to yield a handsome
daily income to the lessor into a mere barren encum-
brance on his land, a cloud on his title, an incubus and
a manacle which would oppress him and destroy the
marketable value of his land. No lease of land for a
rent, for a return to the landlord out of the land which
passes, can be construed to be intended to enable the
tenant merely to hold the lease for purposes of specu-
lation, without doing and performing in connection
therewith what the lease contemplated. Such a con-
struction would indeed make all such contracts a snare
for the entrapment and injury of the unwary land-
lord. A man buying and paying for land may do with
it as he likes—work it, or let it lie idle. But a tenant
to whom land passes for a specific purpose has no such
discretion; he must perform what he stipulated to do;
and if he has obtained the lease by misrepresentation
and fraud, the lessor may have it rescinded in equity."
(*Rorer Iron Co. v. Trout and wife*, 83 Va. 397, 409, 2
S. E. 718, 5 Am. St. Rep. 285.)

In *Huggins v. Daley*, 40 C. C. A. 12, 48 L. R. A. 320,
a lease giving the right of possession for the purpose
of exploration and development was before the circuit
court of appeals. In treating of the nature of the lease
the court remarked:

"The title is inchoate, and for the purpose of explo-
ration only until the oil is found. If it is not found, ·

no estate vests in the lessee; and, where the sole compensation to the landlord is a share of what is produced, there is always an implied covenant for diligent search and operation. There is, perhaps, no other business in which prompt performance is so essential to the rights of the parties, or delays so likely to prove injurious—no other class of contracts in which time is so much of the essence." (Page 14.)

Farther along in the opinion it was said:

"Where the only consideration is prospective royalty to come from exploration and development, failure to explore and develop renders the agreement a mere *nudum pactum,* and works a forfeiture of the lease, for it is of the very essence of the contract that work should be done. . . . No such lease should be so construed as to enable the lessee who has paid no consideration to hold it merely for speculative purposes, without doing what he stipulated to do, and what was clearly in the contemplation of the lessor when he entered into the agreement." (Page 19.)

In *Maxwell v. Todd,* 112 N. C. 677, 16 S. E. 926, a mineral lease running for a term of ninety-nine years gave the lessee an exclusive right to explore a tract of land and take mineral from the same, paying to the lessors a part of the net proceeds received from the minerals which might be taken from the land. The lease contained no stipulation of forfeiture because of failure to explore or work the mines. The court held that "the law will construe the contract as if such a stipulation had been expressly written therein, and will adjudge such lease to be forfeited if, within a reasonable time, the lessee fails to carry out the purpose of the lease." (Syllabus.)

(See, also, *Venture Oil Co., Appellant, v. Fretts,* 152 Pa. St. 451, 25 Atl. 732; *Crawford v. Ritchey,* 43 W. Va. 252, 27 S. E. 220; *Steelsmith v. Gartlan et al.,* 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107; *Foster v. Elk Fork Oil & Gas Co.,* 32 C. C. A. 560, 90 Fed. 178; *Elk Fork Oil & Gas Co. v. Jennings,* 84 Fed. 839; *Conrad v. Morehead,* 89 N. C. 31; *Hawkins v. Pepper,* 117 N.

C. 407, 23 S. E. 434; *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587, 23 L. Ed. 328; Thornton, Oil & Gas, §§ 126, 129.)

When a lease provides how and when search for oil or gas shall be made there is no room for implications. Likewise, if parties provide for an option in the lessee to operate and pay a royalty on production, or to pay a stated rental if no development is made, the lessee may elect to delay and pay the stipulated price of such delay. The case of *Rose v. Lanyon*, 68 Kan. 126, 74 Pac. 625, cited by plaintiff in error as an opposing authority, is an example. It was there held that when parties enter into a written contract expressly stipulating that the lessee shall have an option to drill a well or pay the price of delay, and also stipulating the grounds upon which forfeiture may be taken, the contract, as to these things, is necessarily binding upon them and cannot be extended by implication. No such stipulations were written in this lease, nor does it contain any language indicating any other purpose than early exploration and operation.

According to the testimony Hartz repeatedly urged Mills to commence operations under the lease. At one time Mills spoke as if he intended to bore for gas "as soon as they could get to it," but nothing in his conduct indicated such a purpose. At another time he stated that he did not have sufficient territory in that neighborhood to warrant him in drilling there. At no time, however, did he do anything toward drilling or exploring for gas, and he never asked for the possession of the land for that purpose. He stated on the trial that he never intended to abandon the lease, but his protracted delay and the failure to do the things contemplated by the lease are equivalent to a surrender and gave the lessor the right to treat the whole contract as abandoned.

Error is predicated on the ruling of the court denying the application of Mills for a jury trial. A suit to cancel a lease is equitable in its nature and one in which

a jury may not be demanded as a matter of right. It is true, as plaintiff in error contends, that there were issues of fact to be tried, but the code provides that only issues of fact arising in actions for the recovery of money or specific real or personal property are to be tried by a jury. All other issues of fact are triable by the court, subject to its power and discretion to order any of the issues to be tried by a jury or by a referee in the manner directed by the code. (Civ. Code, §§ 266, 267; Gen. Stat. 1901, §§ 4713, 4714; *Maclellan v. Seim*, 57 Kan. 471, 46 Pac. 959.)

The objections to rulings on the testimony are not material, and we find no reversible error in the record. The judgment is affirmed.