## EGGLESTON v. SINCLAIR OIL & GAS CO. et al.

No. 18375. Opinion Filed May 29, 1928.

Rehearing Denied July 24, 1928.

(Syllabus.)

### Oil and Gas—Instrument Construed as Lease—Forfeiture of Rights by Abandonment.

The written instrument upon which the plaintiff based his right of action examined, and held to be a lease, and that all rights of the lessee to the enjoyment, possession, and ownership of the oil, gas, and other minerals mentioned in said lease were wholly dependent upon the development, operation, and production under the terms stipulated therein, and that when said lessee wholly abandoned the lease without any attempt at operation or production he forfeited all rights thereto.

Error from District Court, Garfield County; James B. Cullison, Judge.

Snyder, Owen & Lybrand, for plaintiff in error.

Edw. H. Chandler, Wm. O. Beall, Thos. J. Hanlon, Summers Hardy, Robert L. Imler, and W. W. Sutton, for defendants in error.

LESTER, J. The parties to this action occupy the same position here as in the district court.

The plaintiff, on November 21, 1924, brought suit in the district court of Garfield county against the defendants for an accounting and other relief.

The defendants thereafter filed separate demurrers to the petition of the plaintiff. These demurrers were by the court sustained. The plaintiff elected to stand on his petition. Judgment was rendered dismissing plaintiff's petition and allowing defendants their cost.

The plaintiff appealed to this court from said judgment, and the only question to be determined on review is whether or not the court below erred in holding a certain instrument, which was the basis of the plaintiff's suit, to be a lease; the plaintiff contending that said instrument constitutes an absolute grant with conditions subsequent; said instrument being as follows:

"Know All Men By These Presents: That Laura Crews, party of the first part, in consideration of the sum of one dollar paid by the Eggleston Mining, Development, Construction and Manufacturing Company of Oklahoma Territory, party of the second part, having its principal office at Washington, D. C., the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned,

"Have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the said party of the second part, their successors and assigns, all the oil, gas, coal, gold, silver, copper, cement, talcum and all other minerals in and under the following described land, together with the means of ingress and egress at all times for the purpose of drilling, mining and operating for minerals and to lay all pipe necessary for the production, mining and transportation of the oil, gas, coal and other minerals, with the right to use sufficient water, oil or gas to operate said property, and shall have the right to remove all fixtures, machinery, and improvements placed thereon at any time, reserving to the party of the first part 10 per cent. net of the proceeds derived from the sale of said minerals after all expenses are paid. Whenever first party shall request it second party shall bury all oil and gas lines and pay all damages done to the growing crops by reason of such burying and removing of same.

"No well shall be drilled within 200 feet from any building now on said premises without the consent of the first party.

"Said land being of the following description, to wit: The east half of the southwest quarter and west half of the southeast quarter of sec. 30, T. 22, R. 3W. of Ind. Meridian. Work is to commence within 13 months of said premises if mineral is found in paying quantities work shall be continued.

"To have and to hold the above-described premises unto the said party of the second part, its heirs and assigns, on the following conditions. In case operations for either the drilling of a well for oil, or mining for all other minerals are not begun and prosecuted with due diligence within 13 month years then this grant shall become immediately void and null, as to both parties provided that second party may prevent such forfeitures from year to year by paying to the first party the sum of $10 per year for term of 2 years until such well, or other operation is commenced, and it is agreed that the completion of a well shall operate as a full liquidation of all rental under, this provision during the remainder of this lease, which payments are to made at the office of the first party.

"In case party of second part shall bore or otherwise discover either oil, gas, or other minerals, then, in that event, this lease, incumbrance or conveyance shall be in full force and effect for 99 years from the time of the discovery of said product, and as much longer as oil, gas, gold, copper or other minerals can be produced in paying quantities thereon.

"Whenever sales are being made of the product produced on the land described a settlement thereof shall be made at the end of each quarter.

"This lease is not intended as a franchise, but is intended as a conveyance of the property above described for the purposes herein mentioned, and it is so understood by both parties to this agreement.

"In case artesian water only should be struck on said premises the party of the first part shall have the right to use such artesian well upon paying to the second party the cost of piping contained therein, or said party of second part shall remove such piping at its option.

"It is understood between the parties to this agreement that all conditions, between the parties hereunto shall extend to their heirs, executors, administrators and assigns."

The plaintiff further alleged that all rights and interest of the Eggleston Mining, Development & Manufacturing Company, under said instrument, were assigned to the plaintiff on the 24th day of December, 1905, and said assignment filed for record on the 29th day of September, 1924, in the office of the court clerk of Garfield county.

The plaintiff contends that the instrument under consideration constitutes an absolute grant through the use of the following terms, "have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the said party of the second part," etc.

The above granting clause might sustain the contention of the plaintiff were it not for other terms used in said instrument that clearly and unequivocally show that said grant is wholly dependent on the performance of conditions precedent, and in this connection we advert to the following clause in said instrument, showing that the enjoyment of the rights under said instrument was wholly dependent upon the performance of certain things, to wit:

"To have and to hold the above-described premises unto the said party of the second part, its heirs and assigns, on the following conditions. In case operations for either the drilling of a well for oil, or mining for all other minerals are not begun and prosecuted with due diligence within 13 month years then this grant shall become immediately void and null as to both parties provided that second party may prevent such forfeitures from year to year by paying to the first party the sum of $10 per year for term of 2 years until such well, or other operation is commenced, and it is agreed that the completion of a well shall operate as a full liquidation of all rental under this provision during the remainder of this lease, which payments are to be made at the office of the first party."

It is not anywhere claimed by the plaintiff in his petition that he did anything under the terms of the contract save and except the payment of $20, which would have extended the lease for two years from the first time period.

Plaintiff made no claim to any interest under said contract until he filed his action in court on the 24th day of November, 1924, at which time he claimed ownership of the oil and gas produced on said lands and asked for an accounting therein.

The rights of further extension of time in the use and enjoyment of said lands by the plaintiff from the time within which he was allowed to begin operations were dependent upon actual operations or the discovery of either oil, gas, or other minerals, and it not being contended by the plaintiff that he commenced operation within the time provided by the lease or the extension thereof, and it not being claimed that he found any character of mineral on or under the premises so leased, it is clearly manifest that any claim of the plaintiff to any interest in the lands described in the contract is wholly and entirely without merit.

The case of Kelly v. Harris, 62 Okla. 236, 162 Pac. 219, involved the following granting clause:

"Know all men by these presents that

Eliza Harris and J. W. Harris of Creek county, Okla., grantors for and in consideration of $1 cash in hand paid, the receipt of which is hereby acknowledged, and of the royalties to be paid and covenants to be kept hereunder do hereby grant, bargain, sell and convey unto J. E. Wise of Creek county, Okla., grantee, all the oil, gas, coal and other minerals in and to the hereinafter described land."

There were other conditions annexed to said instrument, and this court in that case held that the instrument constituted an ordinary oil and gas lease, and in syllabus paragraph 1 of said case, this court said:

"1. The contract or lease examined, and held to be an ordinary oil and gas lease contract, and subject to the same rules of construction. It rests no right in the lessee to the real estate, nor any interest therein or right thereto, save to explore for oil, etc."

An absolute and unqualified grant of mineral rights is very distinct from an instrument dependent for its maturity and consummation upon the right to thereafter prospect for such mineral on the lands described therein within a given time. The instrument before us is wholly within the latter class.

The plaintiff emphasizes the following clause, which is to be found in said contract:

"This lease is not intended as a franchise, but is intended as a conveyance of the property above described for the purposes herein mentioned, and it is so understood by both parties to this agreement."

Here we find that the second party, who furnished the form of the agreement, designates the same as a lease, and in the same clause provided, "but is intended as a conveyance of the property above described for the purposes herein mentioned."

Clearly, under the terms of said instrument, its purpose was to develop the lands that there might be actual production of minerals, and the rights of the plaintiff were dependent upon development and production.

If this contract is to be construed as a grant, why make provisions that development begin within a certain time? Why make provisions that by the payment of a certain amount such time might be extended? Why provide that if operations were not begun within the terms of said contract, the same should become immediately "null and void"?

The instrument is labeled an "Oil, Gas and Mining Lease." Of course, the title does not fix the status of the instrument. It is the

terms and conditions that are to be found in the instrument that are determinative of the construction to be placed thereon.

An examination of the instrument clearly shows that it was the intention of the parties thereto, and they so contracted, that the second party should within a certain time prospect for oil, gas, and other minerals, and if found, to develop the same and pay royalties thereon to the owner of the land, and if the second party failed to perform the agreement within the time named in the contract time, all of his rights and interests therein would cease.

The plaintiff also asserts that on account of the instrument being ambiguous it was the duty of the court to permit certain facts to go to the jury upon proper instruction of the court. To this contention we cannot agree, for the reason that the contract is in no manner ambiguous or uncertain as to its terms or conditions.

Plainly, the instrument constituted a lease, and the plaintiff having long forfeited all interest therein by abandonment and lapse of time, as shown by the plaintiff's petition, the court properly and correctly sustained the demurrers thereto, and the judgment is affirmed.

MASON, V. C. J., and HARRISON, PHELPS, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See 40 C. J. p. 1078, §696.