DOSS OIL ROYALTY CO. v.
TEXAS COMPANY.

No. 29792. April 27, 1943.

*137 P. 2d 934.*

H. A. Ledbetter and H. E. Ledbetter, both of Ardmore, for plaintiff in error.

J. H. Hill, John R. Ramsey, B. W. Griffith, and Sol H. Kauffman, all of Tulsa (Champion, Champion & Fischl, of Ardmore, and Harry T. Klein, of New York, N. Y., of counsel), for defendant in error.

W. F. Semple, I. L. Lockewitz, Geo. W. Cunningham, Horace B. Clay, Edward R. Hastings, Ray S. Fellows, Villard Martin, L. G. Owen, F. M. Darrough, C. E. Cooper, and Wm. I. Robinson, all of Tulsa, amici curiae.

HURST, J. This is a suit for cancellation of the undeveloped portions of two producing oil and gas leases, upon which no wells have been drilled for more than 14 years. The principal question for decision is whether, in such a case, the lessor may have cancellation without the burden of proving that the lessee could have drilled additional wells with a reasonable expectation of profit.

The first lease covered 40 acres, was executed January 13, 1917, and was for a term of five years and as long thereafter as oil or gas is produced in paying quantities. During the years 1920, 1921, and 1922, six producing wells were drilled thereon near the north and east lines, five in the east 20 acres and one in the northeast corner of the west 20 acres. No wells have been drilled thereon since May, 1922.

The other lease covers 100 acres, was executed December 19, 1916, and was also for a term of five years and as long thereafter as oil or gas is produced in paying quantities. During 1921 and 1922, ten producing wells were drilled thereon. A dry hole was completed January 1, 1923, and in May, 1924, one of the wells was deepened. No wells have been drilled or deepened

since that date. Seven of the producing wells were drilled on the east 40-acre tract and three were drilled in the northeast portion of the 60-acre tract. The dry hole was in the center of the north 40 acres of the 60-acre tract.

It is clear that the wells so drilled did not fully test or develop all of either lease, and the defendant does not so contend. Both leases were on regular Producers 88 forms, and neither contained any provision as to the number of wells required to fully develop the leased premises.

On July 7, 1938, the plaintiff, Doss Oil Royalty Company, served a notice on the defendant, the Texas Company, owner and operator of the leases, demanding that it commence an additional well on each lease within 30 days, and stating that if it failed to do so it would elect to declare the undeveloped portions thereof terminated on the ground of abandonment and breach of the implied covenant to fully develop. No additional wells were commenced. Thereupon the plaintiff, owner of one-half the royalty, commenced this action on October 10, 1938. The other royalty owners refused to join as plaintiffs, and were joined as defendants, as provided by 12 O. S. 1941 § 232, but they filed an answer adopting the plaintiff's petition and asking cancellation.

Plaintiff's petition contained but one cause of action. It stated the facts substantially as above set out, and in addition alleged that defendant had abandoned the purposes of the leases. The prayer was for determination that the implied covenants had been breached and the leases abandoned, and that the undeveloped portions thereof be canceled and for general relief.

Defendant by answer denied any intention to abandon any portion of the leases. It denied that it had breached any of the implied covenants of the leases, and excused its failure to drill additional wells by asserting that it had acted as an ordinarily prudent operator, and that the circumstances did not indicate that further drilling would prove a profitable venture. It said it expected to drill when circumstances warranted, and that it had reasonable hopes thereof in the future.

At the beginning of the trial plaintiff dismissed the petition as to the implied covenant and announced that it "relied alone on the theory of abandonment."

In addition to the facts above set out, plaintiff introduced evidence that it was the custom of operators in that field to drill a well on each 2½-acre tract, and that there were 29 untested drilling sites on the two leases. It produced no evidence, save the failure to drill additional wells for the 14-year period, to show intention to abandon the lease on the part of the operator. It made no effort to show that other wells could have been drilled on either lease with a reasonable expectation of profit. At the conclusion of plaintiff's evidence, defendant interposed a demurrer thereto which was sustained, and plaintiff appeals.

The case has been extensively briefed by the parties and by amici curiae. It has also been orally argued. The principal question concerns the doctrine of abandonment. The plaintiff argues that where there has been a long failure to drill on portions of producing oil and gas leases, there is a legal presumption that the lessee has abandoned such portions, though there has been no physical relinquishment thereof. The defendant urges that such doctrine is unsound, and that in any event the doctrine has been recognized only where there has been an expression by the lessee indicating his intention not to drill presently, or at least until changed conditions justify. It says that cancellation should be granted only for breach of covenant as tested by the standard of the ordinarily prudent operator. The question thus raised, as we shall hereinafter point out, is whether, where there has been initial production on a lease, and after the expiration of the primary term the lessee has failed to drill additional wells for an unreason-

able length of time (here 14 years), the courts should grant relief without requiring the lessor to prove that such additional wells may be drilled with a reasonable expectation of profit as required by the prudent operator rule, and if so, upon what theory or doctrine. This question has engaged the attention of courts and text writers for some time. For a discussion of the various doctrines upon which cancellation is granted in various states, see Summers Oil & Gas (Perm. Ed.) vol. 3, pp. 1-177, and Merrill, Covenants Implied in Oil & Gas Leases (2d Ed.) pp. 268-338.

1. Regardless of the theory urged, suits for the cancellation of oil and gas leases call for the exercise of the equity powers of the courts. Newman v. Replogle, 139 Okla. 86, 281 P. 272; Liles v. Bigpond, 190 Okla. 112, 121 P. 2d 596; 9 Am. Jur. 402; 9 C. J. 1159, 1257. Equity was evolved to escape the rigidity and technicalities of the common law. It looks at substance rather than form. It seeks justice rather than technicality. 30 C. J. S. 331, 506, 513; 21 C. J. 198, 204; 19 Am. Jur. 318. We decline to become so involved in theories or distinctions as to render ourselves impotent to deal effectively with the problem presented in the instant case.

The important fact, regardless of theory, is that defendant had, at the commencement of this action, held substantial undeveloped portions of these leases for over 14 years without drilling a single well thereon. Defendant contends that it is entitled to hold the whole of both leases because it has production on other parts of the leases, and that further development is not required under the implied covenants because circumstances have not indicated that development would be profitable. If defendant's theory is correct, it may hold the land without further development as long as production from the present wells continues in paying quantities, regardless of how long that may be. The courts and text writers condemn such attempts of lessees to so indefinitely freeze the undeveloped portions of oil and gas leases, hold them for speculative purposes, and thus prevent the owners from getting full development of their land. Summers, Oil & Gas (Perm. Ed.) §§ 397, 438; Thornton, Oil & Gas (5th Ed.) (Willis) § 221.

The courts of most states, under the facts alleged and proved by plaintiff, would grant some relief. Though the results reached are the same, the courts grant relief under such circumstances upon varying theories.

Some courts would grant plaintiff and the other royalty owners relief on the ground that there has been an abandonment of the purposes of the leases as to the undeveloped portions (Highfield Co. v. Kirk, 248 Pa. 19, 93 Atl. 815; Fork Oil Co. v. Bridgewater Gas Co., 51 W. Va. 583, 42 S. E. 655; Hodges v. Mud Branch Oil Co., 270 Ky. 206, 109 S. W. 2d 576; Ezzell v. Oil Associates, Inc., 180 Ark. 802, 22 S. W. 2d 1015; Mills v. Hartz, 77 Kan. 218, 94 P. 142; Reeland v. Moore Oil Co., 275 N. Y. S. 489; Pryor Mountain Oil & Gas Co. v. Cross, 31 Wyo. 9, 222 P. 570), others on the ground of breach of implied covenant without requiring proof that additional wells may be drilled with reasonable expectation of profit to the lessee (Sauder v. Mid-Continent Petro. Corp., 292 U. S. 272, 54 S. Ct. 671, 78 L. Ed. 1255, 93 A. L. R. 454), and still others on broad equitable grounds without naming any theory. Severson v. Barstow, 103 Mont. 526, 63 P. 2d 1022. In Oklahoma we have granted relief under similar fact situations and called the theory "abandonment." Wing v. Edwards (9 years) 175 Okla. 642, 54 P. 2d 351; Newman v. Replogle (6 years) above.

The doctrine of abandonment, without physical relinquishment, had its original in solid mineral cases. Summers Oil & Gas (Perm. Ed.) § 453; 40 C. J. 1007. It was extended to cases where lessees failed to drill an initial well (Mills v. Hartz, 77 Kan. 218, 94 P. 142), and finally to cases involving failure to fully develop producing oil and gas leases. Highfield Co. v. Kirk, a-

bove. In the development of the doctrine, the real distinctions between abandonment and breach of convenant have become so obscure that in many cases it is difficult to determine which doctrine is being applied. Summers, Oil & Gas (Perm. Ed.) § 460; Thornton, Oil & Gas (5th Ed. Willis) § 242; L. R. A. 1915B, 565; Merrill, Covenants Implied in Oil & Gas Leases (2d Ed.) § 8. It is said that the abandonment cases really rest on breach of implied covenants. Summers, Oil & Gas (Perm. Ed.) § 469.

We have said that the intention to abandon must be accompanied by physical relinquishment (Dow et al. v. Worley, 126 Okla. 175, 256 P. 56; Scott v. Price, 123 Okla. 172, 247 P. 103), and also that it need not be. Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 P. 33; Hudspeth v. Schmelzer, 182 Okla. 416, 77 P. 2d 1123. We have said that failure to commence drilling operations within the time prescribed by express or implied covenants constitutes abandonment (New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 P. 514; Hitt v. Henderson, 112 Okla. 194, 240 P. 745), and we have also intimated that such failure constitutes breach of an implied covenant (Berton v. Coss, 139 Okla. 42, 280 P. 1093). We have held that long failure to drill accompanied by lessee's statement that he did not intend to drill until there was reasonable evidence of profit is sufficient to establish an intent to abandon a lease, even though it appears that actually there is no such intent. Wing v. Edwards, above; Newman v. Replogle, above. In addition, we have in many cases used the terms abandonment and breach of covenant loosely, and, in granting relief under one doctrine, cited as authority therefor cases relating to the other. Newman v. Replogle, above; Robinson v. Miracle, 146 Okla. 31, 293 P. 211; Wing v. Edwards, above.

We think most cases dealing with abandonment in Oklahoma may be placed in one of these three categories: (a) Cases where actual intent to aban-

don is accompanied by physical relinquishment (Blackwell Oil & Gas Co. v. Whited, 81 Okla. 45, 196 P. 688; Dow v. Worley, 126 Okla. 175, 256 P. 56); (b) cases where by an express covenant the lessee was required to commence an initial well within a stipulated time and he has let the stipulated time go by without commencing operations (New State Oil & Gas Co. v. Dunn, above; Eggleston v. Sinclair Oil & Gas Co., 132 Okla. 81, 269 P. 306), or cases where he has not commenced operations within a reasonable time as required by the implied covenant to fully develop (Hitt v. Henderson, above); and (c) cases where after initial development no further wells have been drilled on a substantial portion of a producing lease for an unreasonable length of time, and an intent to abandon has been inferred from the lessee's conduct despite his actual or expressed intent to retain the lease (Wing v. Edwards, above; Newman v. Replogle, above).

We think the first line of cases is based on true abandonment. The true basis for the second line of cases is not abandonment, but rather that the leases had expired by their express terms, or that the implied covenant to commence operations within a reasonable time had been breached.

It is with the last class of cases that we are now dealing. After careful consideration we have concluded that, while relief has been properly granted in such cases, we have given incorrect reasons for so doing. In such cases, it is apparent that there has been no real intention on the part of the lessees to abandon the undeveloped portions of the leases. Rather they have intended to hold them for speculative purposes, hoping that something would occur that would indicate that further drilling would result in paying production. Though we have indicated to the contrary, expressions of an intent not to drill until conditions change are not truly indicative of an intent to abandon. They are merely assertions of re-

liance upon the prudent operator rule. We have conclusively presumed the intent to abandon from failure to drill for an unreasonable length of time. This doctrine of abandonment is simply a legal fiction used to arrive at an equitable result. The true basis of such decisions is forfeiture for breach of covenant, as decided by the United States Supreme Court. Sauder v. Mid-Continent Petroleum Co., above. The implied covenants of a lease require the lessee to develop and operate the lease with due regard for the lessor's interest therein as well as his own. Neither the lessor nor the lessee is the arbiter of the extent to which, or the diligence with which, the lessee shall proceed, but such question is committed to the sound discretion of the courts to be determined from the facts and circumstances of each case. Ramsey Petroleum Corp. v. Davis, 184 Okla. 155, 85 P. 2d 427. To permit the lessee to hold the lease for an unreasonable length of time for merely speculative purposes, is to allow him to protect his own interest and to disregard the interest of the lessor. If conditions do not indicate to him that further development will be profitable, it is but fair that, after a reasonable time has expired, he surrender the undeveloped portions of the lease and allow the lessor to procure development by others or assume the burden of showing why in equity and good conscience the undeveloped portion should not be canceled so that the owner may, if possible, get it developed by others.

We have recognized this right in the past and justified cancellation by the fiction of abandonment. And while equity looks to the substance of things and concerns itself but little with technical distinctions, yet legal fictions and false doctrines have a tendency to lead to confused thinking, and it is always better to use and apply words and terms according to their correct meaning. We think the rights heretofore granted under the theory of abandonment should be granted under the true doctrines of breach of the implied covenant to fully

develop. It is the duty of the lessee to develop the premises with diligence. The prudent operator rule may be considered as a measuring stick to guide the court in determining the diligence required of the lessee in order to ascertain whether a breach of the implied covenants has occurred. Like other rules of equity, the prudent operator rule is not inflexible. As was well said in Ramsey Petroleum Co. v. Davis, above, quoting from Fox Petroleum Co. v. Booker, above, "the statement that the implied covenant for further operations is limited to cases where there is likelihood of profit to the lessee must be taken in a restricted sense and is not of universal application. It will depend upon the facts and circumstances of the particular case." The broad rule as to the burden of proof stated in Ramsey Petroleum Co. v. Davis, above, is not to be applied after the lapse of an unreasonable length of time.

The rule we thus promulgate is in harmony with the rule that oil and gas leases should ordinarily be construed so as to promote development and prevent delay and unproductiveness, where their terms will permit it. New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 P. 514. What may be an unreasonable length of time must necessarily depend upon the circumstances of each case. We leave the doctrine of abandonment to be applied in cases where intention to abandon is accompanied by physical relinquishment.

Since the duty to develop is based on an implied covenant, lessees are protected by the rule requiring a demand for compliance therewith, and a reasonable time therefor, which the courts of equity ordinarily require before decreeing forfeiture in other implied covenant cases. Hudspeth v. Schmelzer, above. The danger that demand might not be required in this type of cases because it is not generally required in abandonment cases (Hitt v. Henderson, above) will be thus avoided. The lessees will be further protected by the general rule that equity will not decree

a forfeiture where special circumstances would make it inequitable to do so. Pelham Petroleum Co. v. North, 78 Okla. 39, 188 P. 1069. And the courts may logically condition their decrees so as to do justice in each case by giving the lessee a reasonable time within which to elect whether to drill other wells or suffer forfeiture, as has frequently been done.

2. It may be thought that since plaintiff announced at the trial that it relied solely on the doctrine of abandonment, it should not now be granted relief on any other theory. However, it has made the demand for further development ordinarily required in breach of covenant cases, and the other royalty owners have ratified the making of the demand by joining in the prayer of the plaintiff for cancellation. Axis Petroleum Co. v. Taylor, 42 Cal. App. 2d 389, 108 P. 2d 978; Gill v. Bennett (Tex. Civ. App.) 59 S. W. 2d 473. In its petition plaintiff stated the facts in ordinary and concise language and prayed for cancellation, the relief to which it supposed itself entitled, and also for general relief. This complied with the requirements of the rules of pleading prescribed by our Code. 12 O. S. 1941 § 264. When a plaintiff states and proves the facts, he is not required to designate the theory upon which relief may be granted. He is entitled to any relief which the facts may justify. Page v. Oklahoma City, 129 Okla. 28, 263 P. 448; St. Louis-S. F. R. Co. v. Yount, 30 Okla. 371, 120 P. 627. This is the very heart of the Code. To require him to correctly name his theory would be a step backward toward the old practice of pleading forms of action, the very thing the Code was designed to abolish.

Furthermore, it is apparent that here the plaintiff was relying on our former decisions. It should not be penalized because we are now changing the theory upon which relief was granted in former cases.

We think the judgment was clearly against the weight of the evidence and must be reversed. Biggs v. Federal Land Bank, 186 Okla. 99, 95 P. 2d 902. In this case 14 years was an unreasonable length of time for the lessee to hold the undeveloped portions of the leases without drilling, in the absence of any showing of special circumstances justifying the nondevelopment. The case should be retried, and after full hearing the court should grant the plaintiff the relief, if any, to which it may be entitled under the rules of equity.

Reversed, with instructions to grant a new trial and to proceed in accordance with the views herein expressed.

CORN, C. J., and OSBORN, DAVISON, and ARNOLD, JJ., concur. RILEY, J., concurs in conclusion. GIBSON, V. C. J., and BAYLESS and WELCH, JJ., dissent.