No. 36,112

FRANK J. TAMSK, *Appellant,* v. THE CONTINENTAL OIL COMPANY,
*Appellee.*

(150 P. 2d 326)

Opinion filed
July 8, 1944.

*W. J. King,* of Geuda Springs, argued the cause for the appellant.

*William M. Zwick,* of Ponca City, Okla., argued the cause, and *Ed T. Hackney,* of Wellington, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to cancel an oil and gas lease and to recover money. Judgment was for defendant sustaining its demurrer to plaintiff's evidence. Plaintiff appeals.

The petition set out two causes of action.

In the first, plaintiff pleaded ownership of the land in question and that on June 7, 1923, he and his wife gave an oil and gas mining lease to the Alcorn Oil Company and that at the time of filing the petition defendant claimed to be the owner of the oil and mining rights covered by the lease by reason of an assignment duly recorded which contained a provision—

". . . that the oil and gas mining lease is now owned as to the oil mining rights by the Continental Oil Company, a corporation, and as to the gas mining rights by the Home Natural Gas Company.

"That Harris & Haun, Inc., completed a producing gas well on the south one-half of the Southwest Quarter (S ½ SW ¼) of Section 14, Township 34 South, Range 2 East, Sumner County, Kansas, and covered by the oil and gas mining lease above described, and said well having been completed as a producing gas well on the 11th day of January, 1928; that said well was deepened to 3490 feet and completed June 6, 1934, as a producing oil well."

Plaintiff alleged that this record constituted a cloud on his title; that this gas well was the only well ever drilled on the premises and was completed just before the expiration of the primary term of the lease and in spite of this the defendant had neglected to undertake any more development; that plaintiff had demanded that

this cloud be removed; that defendant had refused to do so; that plaintiff had been compelled to pay a fee of $200 to secure a lawyer to bring the action. Judgment was prayed against the Continental Oil Company canceling this lease.

For a second cause of action, plaintiff pleaded the ownership of the land in question; that on June 7, 1923, he and his wife had given this lease to the Alcorn Oil Company and defendant claimed to be the owner of this lease until the month of January or February, 1933, at which time it abandoned it. Plaintiff alleged that the Alcorn Oil Company changed its name to the Marland Oil Company and the Marland Oil Company made a contract with Harris & Haun, Inc., on November 2, 1927, wherein it was recited—

"Whereas the parties hereto desire to enter into a contract for the purpose of developing said land for gas mining purposes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Seventh. It is specifically understood and agreed by and between the parties hereto that neither this agreement, nor the assignment made by virtue of the terms hereof, shall in any way affect the party of the first part, its successors or assigns, to develop said leasehold first above described for oil mining purposes."

Plaintiff alleged that this contract was duly recorded in the office of the register of deeds; that just before the expiration of the primary term of this lease, which was on June 7, 1928, Harris & Haun completed a gas well on the 11th of February, 1928, by drilling to the approximate depth of 3,456 feet. Under the terms of the contract the Marland Oil Company was paid out of the proceeds of this well an overriding royalty; that Harris & Haun sold this gas to the Kansas-Oklahoma Gas Company and on July 15, 1929, Harris & Haun sold all the natural gas rights and all personal property used in connection therewith to the Kansas-Oklahoma Gas Company; that the Kansas-Oklahoma Gas Company assigned this lease to the Home Natural Gas Company; that this well was the only well ever drilled on the property of the plaintiff and ceased to produce marketable gas in January or February of 1933, at which time the Home Natural Gas Company abandoned it. The petition further stated that sometime during February of 1933 all leases owned by the Marland Oil Company were assigned to the defendant; that after this gas well became depleted neither the Home Natural Gas Company nor the defendant oil company showed good faith in drilling additional wells on the land of plaintiff and by reason of such facts the plaintiff concluded that each company had

forfeited its right so to do; that after fifteen months had intervened one Ben Grallop asked permission of the plaintiff to drill the abandoned well deeper, whereupon the plaintiff gave him permission so to do and Grallop struck oil in paying quantities; that just before the filing of this action plaintiff discovered that the defendant had filed in the office of the register of deeds a statement that this lease was then owned as to the oil rights by defendant; that this statement was placed on record fourteen months after the defendant had forfeited its leasehold privileges and defendant knew such statement to be false; that plaintiff had discovered that the defendant had been taking the proceeds of oil produced from plaintiff's premises and that by reason of the false statements defendant has procured the written consent of producers to take three-fourths of the oil produced; that by reason of such acts one-eighth of the oil produced since June, 1934, and all oil hereafter produced was the property of plaintiff.

In this cause of action plaintiff asked for judgment for $2,500 and that this sum be trebled by reason of statutory provisions and judgment be entered against defendant in the sum of $7,500 and for judgment for exemplary damages in the sum of $500.

On account of the disposition which is to be made of this case it is not deemed necessary to set out the allegations of the defendant's answer. When the case was tried the parties stipulated the chain of title. The stipulation was as follows:

"(a) Mr. Frank J. Tamsk and wife were, prior to 1923, the owners of the Southwest Quarter (SW ¼) of Section Fourteen (14), Township Thirty-four (34) South, Range Two (2) East, in Sumner County, Kansas. On the 7th day of June, 1923, they executed an oil and gas lease covering the land to the Alcorn Oil Company. The lease was for a term of five years and so long as the land produced oil or gas.

"(b) On the 31st day of May, 1924, Alcorn Oil Company assigned the lease to the Marland Oil Company.

"(c) On the 27th day of March, 1928, the Marland Oil Company assigned the lease covering the gas rights to Harris & Haun, Incorporated; under this transfer the Marland Oil Company retained the oil rights.

"(d) Marland Oil Company assigned the oil rights to Marland Production Company on the 4th day of April, 1928.

"(e) On July 1, 1929, Marland Production Company was merged with Continental Oil Company, and Continental Oil Company acquired the oil rights under the lease.

"On February 18, 1928, during the 5-year term of the lease, Harris & Haun, Incorporated, drilled a gas well on the south half of this quarter section. This

well produced gas until the spring or summer of 1933. Royalties were paid plaintiff until the well failed to produce.

"(f) On July 15, 1929, Harris & Haun, Incorporated, owners of the gas well and gas rights under the lease, assigned their rights to The Kansas-Oklahoma Gas Company.

"(g) On October 31, 1933, The Kansas-Oklahoma Gas Company assigned the gas rights under the lease to the Home Natural Gas Company.

"(h) On January 24, 1934, the Home Natural Gas Company assigned the gas rights to The Kansas-Oklahoma Oil & Gas Company.

"(i) On July 21, 1936, Continental Oil Company, the owner of the oil rights under the lease, assigned their oil rights to The Kansas-Oklahoma Oil & Gas Company, reserving from said conveyance an overriding royalty of one-sixteenth (1/16) of the oil to be produced from the South Half (S ½) of Section Fourteen (14) of said lands.

"(j) On July 24, 1936, The Kansas-Oklahoma Oil & Gas Company assigned its oil rights to one H. Gussman.

"(k) On September 23, 1941, Continental Oil Company released to Frank J. Tamsk the oil and gas lease insofar as it covered the oil rights under the lease in the North Half (N ½) of the Southwest Quarter (SW ¼) of Section Fourteen (14).

"(l) On February 27, 1942, Mr. H. Gussman, who had acquired the oil rights in the lease under the South Half (S ½) of the Southwest Quarter (SW ¼) of Section Fourteen (14), released all of the oil rights, except the producing oil well and a tract of land 200 square feet to operate the well."

It is also stipulated by the parties that plaintiff was the owner of one-fourth of the royalty interest in the minerals, he having sold three-fourths of his royalty interest prior to the filing of this action. It is also stipulated that after the gas well, to which reference has been made, became depleted it was deepened and became a producer in paying quantities at the time of the trial. Plaintiff's evidence further established that shortly after this well came in he and his wife signed a division order wherein it was stated that plaintiff was the owner of the one-fourth interest in the oil being produced and wherein he authorized the proceeds accruing to this interest be applied on a mortgage on the land in question. The payments have been made from June, 1934, to the present time.

The foregoing constituted substantially all the evidence upon which plaintiff relied. The trial court sustained the defendant's demurrer and gave judgment for defendant.

The plaintiff first argues that the trial court erred in denying him a jury trial. This was an action to cancel an oil and gas lease. Such an action is in equity. See *Mills v. Hartz,* 77 Kan. 218, 94 Pac. 142. In a suit in equity the plaintiff is not entitled to a jury as a

matter of right. See *Spena v. Goffe,* 119 Kan, 831, 241 Pac. 257; also *In re Holloway's Estate,* 100 Kan. 368, 164 Pac. 298.

Plaintiff next argues that the trial court erred in refusing to make findings of fact as requested by him. This action was disposed of by sustaining a demurrer to the evidence because it did not prove a cause of action. Under such circumstances the trial did not reach the stage where findings of fact were required. The plaintiff was not prejudiced by this failure of the trial court. As we shall see presently, the evidence of plaintiff failed to establish a cause of action. In the absence of prejudice the failure to make findings is not grounds for reversal. See *Marquis v. Ireland,* 86 Kan. 416, 121 Pac. 486.

Plaintiff next argues that his evidence was sufficient to sustain an action to cancel the lease. It is a little difficult to follow the argument of counsel for plaintiff on this point. He seems to argue that because he demanded a release of the lease from defendant on September 12, 1941, and filed this action twenty days later, and four months later defendant filed a release with the register of deeds releasing its lease on only the north half of this property, the entire lease should be canceled.

In this connection he refers to G. S. 1935, 55-202 to 55-206. These sections provide a procedure whereby a landowner may clear his title of the cloud on it caused by a lease that has been forfeited. In order for these sections to apply, however, it must appear that the lease has become forfeited. Until that happens there is no occasion for the procedure under this statute. This court has passed on the question of what showing in the way of failure to develop was necessary in order to warrant cancellation of a lease. In *Fischer v. Magnolia Petroleum Co.,* 156 Kan. 367, 133 P. 2d 95, we reviewed these authorities in the light of the evidence in that case. We noted that the plaintiff did not allege that there were any producing wells immediately adjacent to his land on any side; that there had been any drainage of oil from his land or that there was any threat of such drainage. He did not allege any violation by lessee of obligation to drill offsetting wells. The rule is stated as follows:

"Neither the lessor nor the lessee under an oil and gas lease is the sole judge of what constitutes prudent development of the tract. Whatever would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required." (Syl. ¶ 2.)

In this case there is no allegation or proof that plaintiff's land was suffering any damage or detriment by reason of development on other lands within the area or the failure to offset such development. Appellant made no proof whatever that an operator of reasonable prudence, with regard to the interests of both lessor and lessee, would have drilled, under the existing facts and circumstances, additional wells. There is a further reason why we shall not order a cancellation of the lease on this record. By a reference to the stipulation it appears that the lease on all this land has been released to plaintiff except that on a place 200 feet square where the producing well is located. The only interest the defendant has in that lease is a one-sixteenth of the working interest. This action for forfeiture is not brought against the other parties who own the balance of this working interest. Any order of cancellation that might be entered would operate against this one-sixteenth interest only.

In the next question argued plaintiff points out that in the instrument by which the Marland Oil Company assigned all its interest in this lease to Marland Production Company there was no description of the land. He argues that on account of this lack the assignment was a nullity, and since this assignment was one of the links in the defendant's chain of title, defendant did not receive a good title to the lease, and hence its reservation of a sixteenth of the working interest was of no effect. The trouble about this argument is that the parties stipulated that the defendant acquired the oil rights under the lease. Furthermore, plaintiff in this petition pleaded that the oil and gas mining lease is now owned as to the oil mining rights by the Continental Oil Company.

We shall not pass on the question of whether the omission of a description of the land made this lease void. It is clear that the plaintiff may not raise that question now.

There is a further reason why plaintiff may not now raise the question of the right of the Continental Company to this one-sixteenth working interest. Shortly after the producing well was brought in he and his wife signed a division order, under which they authorized the purchaser of the oil to pay out their royalty interest to the holder of the mortgage on plaintiff's farm. This order set up the various owners of interests in the oil rights and showed on its face that defendant's interest was a sixteenth. Payments were made in conformity with this order from June, 1934, to the present.

time. Plaintiff has not pleaded or proved that he was deceived when he signed this order. Under such circumstances equity would not permit us to order a cancellation of this one-sixteenth interest of the defendant.

Plaintiff next argues that this lease should be canceled because only a gas well was drilled during its term. The burden of this argument is that when the original lessee assigned merely the gas rights in the lease and that assignee proceeded to drill the gas well, this did not constitute any development of the oil rights, hence the lease was forfeited as far as it covered oil developments. The answer to that is what we have already said in this opinion as to whether or not under all the circumstances equity would permit a cancellation of this oil lease.

Other questions raised by the plaintiff have been examined and found to be without merit.

The plaintiff makes no argument in this court that he proved facts to justify his claim for money.

The judgment of the trial court is affirmed.