No. 37,691

TOKLAN ROYALTY CORPORATION, a Corporation, JOHN H. LEAVELL, and F. E. BERNSEN, *Appellees* and *Cross-appellants,* v. PANHANDLE EASTERN PIPE LINE COMPANY, a Corporation, *Appellant* and *Cross-appellee.*

(212 P. 2d 348)

Opinion filed December 10, 1949.

*Mark H. Adams,* of Wichita, and *Arthur G. Logan,* of Wilmington, Del., both argued the cause, and *Charles E. Jones, Wm. I. Robinson, J. Ashford Manka, Addison I. West,* all of Wichita, and *Edward G. Lange* and *C. R. Kirkbride,* both of Kansas City, Mo., were with them on the briefs for the appellant.

*A. D. Weiskirch* and *Manford Holly,* both of Wichita, argued the cause, and *George B. Collins, C. L. Williams* and *Oliver H. Hughes,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an action for cancellation of contract and for the recovery of money. The defendant appeals from an order overruling its demurrer to a first cause of action for cancellation of the contract as set forth in an amended petition. The plaintiffs appeal from an order sustaining a demurrer to the second cause of action for recovery of money and an earlier ruling requiring them to separately state and number their causes of action.

The over-all picture to be gleaned from a lengthy and involved amended petition, giving that pleading the benefit of all inferences to which it is entitled when attacked by demurrer, can be stated thus:

On July 7, 1937, the defendant, Panhandle Eastern Pipe Line Company, entered into a gas purchase contract with R. K. Wilson. This contract provided that such individual should sell all the natural gas he was able to produce through drilling wells upon certain oil and gas leases owned by him, covering and upon approximately sixty-four hundred acres of land in Grant county, and that the defendant should at its own cost and expense construct a gather-

ing line a distance of approximately fourteen miles and thereafter take and pay for all gas so produced from such leases at a price of four cents per one thousand cubic feet. By its terms the contract ran with the land and the oil and gas leasehold estate and provided that it was to be binding upon the parties, their respective heirs, successors and assigns. The contract, attached to and made a part of the petition, contains numerous other provisions of no particular importance to a decision of the issues involved.

While there are no express allegations to that effect, it may be assumed, since the plaintiffs' interests depend upon title acquired from him, that sometime after the execution of the contract Wilson in some manner legally transferred his interest in the leases to Theodore F. Parish and Frank P. Parish who thereby succeeded to all his rights under the gas purchase contract.

On or about May 31, 1941, the Parishes entered into an agreement with plaintiffs, by which the latter advanced the Parishes $90,-000 and they agreed to assign to plaintiffs as security an undivided 1062/1350ths of the 7/8ths working interest of the first oil and gas produced from the leasehold until the loan with interest at four percent was fully paid. Thereafter division orders were delivered to the defendant notifying it of such action.

On the same day the identical parties entered into a second contract whereby in consideration of a waiver of the interest payments required by the terms of the loan agreement, covenants pertaining to sharing in expense to be shortly incurred in the acidization and reconditioning of the gas wells on the premises in question and payment of the sum of $100 the Parishes gave plaintiffs an option to purchase an undivided 81/135ths of the 7/8ths working interest in their oil and gas leases.

The assignments referred to in the contract of May 31, 1941, were duly executed, and later on June 16, 1941, deposited with The Fourth National Bank of Tulsa, Okla., together with an escrow agreement providing they were to be delivered by that institution to plaintiffs in the event of their exercise of the option heretofore mentioned.

December 13, 1944, defendant filed an action for recovery of a substantial sum of money against the Parishes in Grant county, Kansas. Two days later an attachment was issued out of the district court of that county and levied on their interest in the oil and gas leasehold. Thereafter a receiver was appointed to take charge of and handle the property.

On December 16, 1944, one day after the attachment levy, plaintiffs exercised the option granted under the contract of May 31, 1941, procured the assignments from the escrow agent and on December 18, 1944, caused them to be placed of record in the office of the register of deeds of Grant county.

February 6, 1945, the action in the Grant county district court was removed to the United States District Court of Kansas, Second Division. There, the plaintiffs intervened, asserted title to sixty percent of the oil and gas leases based upon the transactions heretofore related and asked for a judgment discharging the attachment.

The attachment was discharged by order of the federal court on October 1, 1947. Following that action the receiver paid plaintiffs all money collected by him for gas produced from and attributable to their interest in the leases.

The amended petition further states that defendant at all times material to the action has taken all gas produced and saved from the oil and gas leases described in the purchase contract into its pipe line but asserts that all moneys due them since January, 1945, inuring by virtue of such contract, have been paid plaintiffs solely pursuant to court orders resisted by defendant and that the latter still questions plaintiffs' title to the interest acquired by them in the leases under the option agreement and have informed them it does not recognize their interest therein and will not pay them any of the proceeds accruing from gas runs arising therefrom.

In addition to what has been heretofore related such amended pleading states that the gas purchase contract has become an improvident bargain and is, therefore, a contract against public policy which should be canceled. It also contains charges, supported by appropriate allegations, in substance to the effect defendant has breached such contract because (1) it contested dissolution of the attachment; (2) it attempted to acquire title to plaintiffs' properties by asserting the transfer to plaintiffs was obtained by a usurious contract; (3) it attempted a conspiracy by an offer to the Parishes to dismiss the action against them if they would join with it in a suit to set aside and annul the transfer to plaintiffs on grounds of usury; (4) it failed to pay for gas runs while the attachment proceedings against the Parishes were pending and has refused to recognize plaintiffs' leasehold estate and their title therein and pay for gas runs accruing thereafter, and (5) its action with respect to all

such matters has prevented plaintiffs from effecting a profitable merger with Aberdeen Petroleum Corporation, a Delaware corporation.

Up to this point our relation of factual allegations has been limited to the first cause of action. The second cause of action includes all pertinent averments of the first by reference and one further allegation which reads:

"That by virtue of the defendant having breached the hereinbefore referred to gas purchase contract, Exhibit 'B,' in a wilfull, deceitful and malicious manner, as hereinbefore alleged in their first cause of action, that the Court should award, in addition to the cancellation of said gas purchase contract, Exhibit 'B,' a punitive amount that to the Court seems meet in equity to punish the defendant for said wrongs and conduct."

In conclusion plaintiffs pray (1) that under their first cause of action they have judgment for rescission, cancellation and surrender of the gas purchase contract together with any and all equitable relief to which the court may deem them entitled, and (2) that on their second cause of action they recover a money award by way of punitive damages in such an amount as will compensate them for the wrongful and malicious acts perpetrated upon them by the defendant.

Following the filing of the amended petition the defendant demurred to each cause of action therein set forth on grounds of (1) lack of plaintiffs' legal capacity to maintain the action; (2) misjoinder of causes of action; (3) failure of each cause of action to state a cause of action and, (4) lack of jurisdiction on the part of the trial court of the subject of the action, due to the nonjoinder of indispensable parties. This demurrer was overruled as to the first cause of action and sustained as to the second. The parties then perfected the appeals to which we have heretofore referred.

The status of this appeal is so involved that use of the terms appellant and appellee, or others of similar import, will not only confuse the issues but result in a waste of time and space. For that reason, throughout remaining portions of this opinion, the respective parties will be referred to as Toklan and Panhandle.

Since they are in a sense preliminary to a disposition of the main issue we shall first refer to errors assigned by Toklan with respect to rulings on motions to the pleadings. The first is that the trial court erred in requiring it to amend the original petition by separately stating and numbering the causes of action therein set forth. We fail to see where this ruling affected a substantial right or resulted in any prejudice to Toklan. By reference it incorporated

everything in its second cause of action that had been included in the original pleading. Thereafter, the trial court refused to sustain Panhandle's demurrer to the first cause of action for cancellation of the contract. In such a situation the established rule of this jurisdiction is that the ruling on the motion is not appealable. Even if we were to so regard it the trial court's action with respect thereto would not be reversed. (See *Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469; *Hasty v. Bays,* 145 Kan. 463, 66 P. 2d 265; *Gibson v. Bodley,* 156 Kan. 338, 342, 133 P. 2d 112; *Estes v. Tobin Construction Co.,* 159 Kan. 322, 324, 153 P. 2d 939; *Sanders v. Visser,* 165 Kan. 336, 338, 194 P. 2d 511.)

The second claim of this character has reference to the sustaining of a motion to strike an allegation from the amended petition relating to an estimated loss to Toklan resulting from failure to effect a merger with Aberdeen Petroleum Corporation. The ruling on this motion was not included in the notice of appeal and on that account there is sound authority for holding it is not subject to review. (See *Weigand v. Wilson,* 107 Kan. 445, 193 Pac. 1065; *Hardman Lumber Co. v. Spitznaugle,* 130 Kan. 346, 286 Pac. 235; *Dolan Mercantile Co. v. Wholesale Grocery Subscribers,* 131 Kan. 374, 291 Pac. 935; West's Kansas Digest, Appeal and Error, §§ 418 to 421, incl.) Moreover, under the facts as pleaded, there is much merit to Panhandle's contention that for purpose of appellate review its status and that of the order requiring Toklan to separately state and number its causes of action are identical (see the decisions heretofore cited, also *Munger v. Beiderwell,* 155 Kan. 187, 124 P. 2d 452; *Wharton v. Zenger,* 162 Kan. 69, 174 P. 2d 103; *Giltner v. Stephens,* 163 Kan. 37, 180 P. 2d 288). Be that as it may, we need not base our decision on this point upon either of the two grounds last mentioned. The trial court acted on the motion on April 23, 1948. Assuming its action was tantamount to a ruling on a demurrer Toklan made no attempt to appeal until March 10, 1949, more than nine months thereafter. The statute (G. S. 1947 Supp. 60-3309) allows but two months. Consequently, the appeal from this particular ruling is too late (*Hubert v. Board of Public Utilities,* 162 Kan. 205, 206, 174 P. 2d 1017) and we have no jurisdiction (*Eikelberger v. Saline County Comm'rs,* 151 Kan. 619, 100 P. 2d 651; *Palmer v. Helmer,* 159 Kan. 647, 157 P. 2d 531) to consider it.

We can now turn to the real issue in this lawsuit. Panhandle contends it appears upon the face of the amended petition certain

persons, namely those holding the forty percent interest under the gas purchase contract who were not joined as parties plaintiff, are indispensable parties to the action and that hence their demurrer to the first cause of action should have been sustained on several of the grounds therein set forth.

As we approach consideration of this contention it is well to keep in mind applicable provisions of the statute.

G. S. 1935, 60-401, provides that every action must be prosecuted in the name of the real party in interest except under certain circumstances not here involved.

G. S. 1935, 60-412, reads:

"Of the parties to the action, those who are united in interest must be joined, as plaintiffs or defendants; but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in the petition."

It must, of course, be conceded that under the provisions of G. S. 1935, 60-705, a petition is demurrable when on its face it appears the plaintiff has no legal capacity to sue or that it does not state facts sufficient to constitute a cause of action.

It should be noted, without attempting at this point to discuss the reasons for the conclusions therein announced, that under our decisions objections founded on grounds that a plaintiff is not the real party in interest (*Gibbs v. Central Surety & Ins. Corp.*, 163 Kan. 252, 181 P. 2d 520; *Lawrence Nat'l Bank v. Howard*, 125 Kan. 85, 262 Pac. 561) or that a proper party has not brought the action or had no legal capacity to maintain it (*Federal Savings & Loan Ins. Corp. v. Hatton*, 156 Kan. 673, 135 P. 2d 559) must be made by demurrer to the petition or by answer, otherwise they will be deemed to have been waived.

Next let us see who are necessary or indispensable parties to an action wherein the plaintiff seeks to invoke the equitable remedy of cancellation. The general rule can be found in 9 Am. Jur. 395, 396, Cancellation of Instruments, §§ 54, 55, where the following statement appears:

"When instituting a suit for the cancellation of a written instrument, the plaintiff or complainant should join as parties, either plaintiff or defendant according to the nature of their interests, all persons whose rights or privileges may be in any way affected by the granting of the relief he seeks to obtain. Thus, all parties to the instrument must be made parties. The judgment or decree in such an action operates in personam, and one who is not a party to the suit cannot be compelled to deliver up an instrument for cancellation. The successor in interest of the grantee in the instrument in question is always

an indispensable party defendant, even though such successor be the United States, which cannot be sued without its consent.

"It is only when the rights in the instrument of those before the court are completely separable from the rights of those who are absent that the latter are not indispensable parties to an action to cancel or rescind a contract or written instrument. . . ."

To the same effect is 12 C. J. S. 1027, Cancellation of Instruments, § 52, which reads:

"The rules of equity with reference to parties control in a suit wherein plaintiff seeks to enforce equitable rights through the equitable remedy of cancellation or rescission. All persons whose rights, interests, or relations with or through the subject matter of the suit would be affected by the cancellation or rescission are proper and necessary parties in order that they may have an opportunity to be heard; and unless they are made parties the court is precluded from rendering a judgment or decree of cancellation. Where such persons are not made parties originally, they may be brought in by amendment, but until the omission is corrected the court should not proceed further, even though no objection is made by any party litigant."

Our own decisions, obviously in conformity with the specific provisions of G. S. 1935, 60-412, which have long been in force and effect in this state (see G. S. 1868, ch. 80, sec. 37), are in line with the general rule.

Long ago in *Hill v. Lewis*, 45 Kan. 162, 25 Pac. 589, we held:

"In an action to set aside certain conveyances of real estate, it was alleged that the plaintiffs, L. and husband, owned and resided on a tract of land as their homestead, and that while so occupying it the husband executed a conveyance of the same to H., without consent of his wife; that subsequently H. and his wife, Lydia H., executed a deed with the usual covenants of warranty to P. The action to set aside both of these conveyances was brought against H. and P., without joining as a defendant Lydia H., one of the grantors of P. Held, That she is a necessary party in the action to cancel the deed in which she joined as grantor, and that the petition disclosed upon its face a defect of parties defendant." (Syl.)

Another early case, *Constant v. Lehman*, 52 Kan. 227, 34 Pac. 745, holds:

"The rescission of a contract must be made by a restoration to each of the parties thereto of that which has been received under it; and, in order to obtain such rescission, all of the parties interested in the property involved must be brought before the court." (Syl. ¶ 1.)

As recently as *Tamsk v. Continental Oil Co.*, 158 Kan. 747, 752, 150 P. 2d 326, in affirming a judgment refusing to cancel an oil and gas lease, we said:

". . . There is a further reason why we shall not order a cancellation of the lease on this record. By a reference to the stipulation it appears that

the lease on all this land has been released to plaintiff except that on a place 200 feet square where the producing well is located. The only interest the defendant has in that lease is a one-sixteenth of the working interest. This action for forfeiture is not brought against the other parties who own the balance of this working interest. Any order of cancellation that might be entered would operate against this one-sixteenth interest only." (p. 752.)

At pages 208 and 209 of the opinion in *Hubert v. Board of Public Utilities,* supra, we quoted extensively from 39 Am. Jur. 902, § 35, on the subject of indispensable parties and the necessity for their joinder, stressing a statement appearing on page 884, § 25 of the same volume of that work to the effect the burden of procuring the presence of all such parties is on the plaintiff.

A further illustration of the rule is to be found in *Price v. Carmean,* 136 Kan. 744, 18 P. 2d 197, where three of seven heirs attempted to recover a sizeable amount alleged to be due on fifteen shares of stock which had passed into the possession of the administratrix of their deceased father, three-sevenths of which was claimed to belong to the plaintiffs. There we held:

"Where there is a unity of interest in a number of parties in a cause of action, all should be joined as plaintiffs or defendants, and if any party so interested will not consent to join as plaintiff he may be made defendant, the reason being stated in the petition." (Syl. ¶ 3.)

And at page 749 of the opinion said:

"Whether the order relating to the ownership of the shares is of any validity or may be redetermined in the district court, is not necessary now to decide. In any event, such a question cannot be reëxamined and determined in the district court until all interested parties are brought in on proper pleadings which present the distinct issue so that it can be tried out in conformity with the governing rules of procedure.

"When the defects mentioned were presented to the court, and it became apparent that under the petition plaintiffs were not entitled to recover, they did not ask to amend the petition to make necessary parties, to eliminate improper parties, or to cure the misjoinder of actions. In this situation the court had no alternative than to dismiss the action."

Other decisions, not necessarily decisive but nevertheless informative, dealing with various phases of the same doctrine but particularly with the consequences of failure to insist upon joinder of necessary parties are: *Thomas v. Reynolds,* 29 Kan. 304; *Coulson v. Wing,* 42 Kan. 507, 22 Pac. 570; *Hurd v. Simpson,* 47 Kan. 245, 26 Pac. 465, and 47 Kan. 372, 27 Pac. 961; *Maezler v. Swan,* 75 Kan. 496, 89 Pac. 1037; *McGinnis v. General Exchange Ins. Corp.,* 142 Kan. 338, 46 P. 2d 876; *Grolier Society v. Foster,* 110 Kan. 306, 203 Pac. 920.

Toklan insists failure to join parties, even though they are united in interest and therefore indispensable under allegations of a petition, constitutes a mere defect in parties which is not one of the grounds for a demurrer. It is true the statute no longer contains any such ground. However, that does not mean a petition is not demurrable when indispensable parties have not been joined. When that is apparent there is not only a defect of parties but a lack of legal capacity to maintain the action. There is nothing mysterious about what is meant by "capacity to sue" as that term is used in 60-705, *supra*. It consists of the right to come in to court for relief concerning the subject of the action (*Howell v. Cement Co.*, 86 Kan. 450, 452, 121 Pac. 346; *Braden v. Neal*, 132 Kan. 387, 390, 295 Pac. 678). So where a plaintiff pleads facts clearly disclosing he has no right to come into court and maintain his action because of failure to join indispensable parties he lacks legal capacity to sue and his petition is demurrable on that ground. More than that when on the face of a petition it appears there is a unity of interest in the subject of the action and that the plaintiff has not joined persons so united in interest it cannot be said the action has been instituted by the proper party or is being maintained by such plaintiff as the real party in interest. Toklan concedes that if its petition is susceptible of such a construction the demurrer would be good.

We have not failed to examine the numerous decisions cited by Toklan in support of its position on the subject just disposed of. *Thiessen v. Weber*, 128 Kan. 556, 278 Pac. 770, on which they place much weight, was an action for forfeiture and cancellation of an oil and gas lease. Resort to the decision will reveal that it was decided upon an entirely different state of facts. Indeed, at one point in the opinion it is said "by the terms of the lease, therefore, the interests of the parties to the instrument were recognized as being divisible." Moreover, it there clearly appears the plaintiff had made all persons interested in the involved lease parties defendant to the action and that the court was not concerned with any defect of parties in deciding the case. Such decision is clearly distinguishable and therefore not decisive. The other decisions on which Toklan relies are more easily distinguished and for that reason do not merit specific attention.

From the authorities to which we have heretofore referred we have little difficulty in concluding that Toklan cannot maintain the instant action for cancellation of the gas purchase contract without

joining, either as plaintiffs or defendants, all other persons who have a forty percent interest in that agreement. Clearly under its terms the parties entitled to its benefits are united in interest if for no other reason than they have an undivided interest in each and every cubic foot of gas produced and delivered from the leasehold estate in which they have a like interest. Therefore, under our decisions the holders of the forty percent interest are indispensable parties to the action, without whom the court could not render an effective decree of cancellation. It follows the demurrer to the first cause of action should have been sustained on the ground that under the allegations of the petition Toklan had no legal capacity to maintain the action.

But that is not all. The court should have sustained the demurrer to such cause of action on the additional ground it failed to state facts sufficient to constitute a cause of action for cancellation of the contract. In *Shawnee County Comm'rs v. Cook*, 141 Kan. 677, 42 P. 2d 568, an action to foreclose a mortgage on participation bonds in which a number of persons were united in interest, we held:

"In an action brought by the holder of a part only of such participation mortgage bonds, to foreclose the original mortgage, a petition which does not allege failure or refusal of the trustee to declare the debt due and to institute foreclosure proceedings, or, if such failure or refusal be alleged, to join as parties plaintiff all those united in interest by reason of being owners of the remainder of such participation mortgage bonds, or if they will not consent to so joining, to make such nonconsenting holders defendants in the action, giving the reason therefore, does not state a cause of action. " (Syl ¶ 3.)

It may be suggested the amended petition contains an allegation to the effect that if the holders of the forty percent interest in the contract were necessary parties they should be given an opportunity to intervene in the action. The trouble is they did not intervene and Toklan did not make them parties as it was required to do under the provisions of G. S. 1935, 60-412, before the demurrer was ruled upon. The burden, as we have heretofore indicated, of procuring the presence of all indispensable parties was on plaintiff in the action, not the trial court.

The conclusions just announced do away with all necessity for discussion of other theories advanced by Panhandle as to why allegations of the first cause of action failed to state facts sufficient to constitute a cause of action for cancellation of the contract. The same holds true of arguments made by Toklan in support of their sufficiency.

On the same premise little need be said with reference to Toklan's contentions pertaining to the sufficiency of the second cause of action. It suffices to say all claims to punitive damages therein made were based primarily on its right to have the contract canceled and that in the absence of its legal capacity to maintain the action for that purpose the trial court properly sustained the demurrer to such cause of action.

The judgment of the trial court in overruling the demurrer to the first cause of action is reversed with directions to sustain such demurrer and its judgment sustaining the demurrer to the second cause of action is affirmed.