(20 P.3d 88)

No. 84,883

COMMERCE BANK, N.A., WICHITA, KANSAS, *Appellee*, v. LIEBAU-WOODALL & ASSOCIATES, L.P.; FRED F. LIEBAU, JR., Individually and as Trustee of the FRED F. LIEBAU, JR. REVOCABLE TRUST; and JAMES G. WOODALL, *Defendants*, and LINDA S. PARKS, as Trustee for the Liquidation of PRIMELINE SECURITIES CORPORATION, *Intervenor/Appellant*.

Opinion filed March 2, 2001.

*Arthur S. Chalmers* and *Scott R. Schillings*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellant.

*Marin W. Bauer* and *Jack Balderson, Jr.,* of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, for appellee.

Before RULON, C.J., ELLIOTT, J., and WAHL, S.J.

RULON, C.J.: Intervenor Linda S. Parks, Trustee for the liquidation of Primeline Securities Corporation (PSC) appeals the district court's refusal to set aside a consent judgment entered into between plaintiff Commerce Bank, N.A., Wichita, Kansas (Commerce Bank), and defendants Liebau-Woodall & Associates, L.P. (Liebau-Woodall); Fred F. Liebau, Jr., individually and as trustee of the Fred F. Liebau, Jr. Revocable Trust; and James G. Woodall. The intervenor contends that as the trustee in an involuntary bankruptcy, she was an indispensable party to the consent judgment and the consent judgment entered without her participation was void. We reverse and remand for further proceedings.

In 1992 Liebau-Woodall entered into an indenture agreement for the sale of debentures to investors to raise $250,000. The investors' interests were originally managed by Union National Bank in Wichita. Eventually, Commerce Bank succeeded to the management of the trust.

The indenture agreement did not formally provide for security, but Commerce Bank claims the parties to the agreement understood that the money would be used to finance the renovation of office building space for lease, which would provide the security for the investment. In addition, Fred F. Liebau and James G. Woodall personally guaranteed the indenture agreement. The guaranty agreement provided that "the Issuer will use the proceeds from the sale of the Debentures, in part, to finance the reconstruction and refurbishing of real property located within the City of Wichita, Kansas, for use as an office building and other Partnership purposes as provided by law."

In September 1993, the indenture agreement was amended to authorize the sale of debentures to a total of $750,000. Liebau-Woodall redeemed $25,000 of the debentures before eventually defaulting.

On January 8, 1998, Commerce Bank filed suit against Liebau-Woodall for judgment in the amount of the outstanding $725,000 debt plus interest and costs, further requesting an equitable mortgage on the office building purchased and maintained with the

capital obtained through the sale of the debentures. On March 18, 1998, Commerce Bank and Liebau-Woodall arrived at a settlement which was memorialized in a consent judgment. The judgment ordered Liebau-Woodall to pay $725,000 plus interest and costs and imposed an equitable mortgage against the office building at 154 North Topeka, Wichita, Kansas.

In the meantime, the Securities Investor Protection Corporation (SIPC) forced PSC into an involuntary liquidation bankruptcy, under 15 U.S.C. § 78eee(b)(3) (1994). As of January 9, 1998, an automatic stay was imposed upon all judicial or nonjudicial procedures designed to attach assets of PSC. Todd M. Connell, the trustee appointed to oversee the liquidation, began an investigation of PSC's assets. (Connell was later replaced in the liquidation procedure by Linda S. Parks as Trustee. The term "Trustee" will be used throughout our discussion to generally describe the trustee of the liquidation procedure).

The Trustee's investigation revealed that Liebau and Woodall each owned a 50% general partnership interest in Liebau-Woodall. In turn, either the partnership or the combined individual shares of Liebau and Woodall allegedly comprised the entire stock of several related corporations, such as Primeline Financial Group, Inc. (PFG), Primeline Insurance, Inc. (PI), Primeline Advisory, Inc. (PA), and First Street Leasing, L.L.C. (FSL). PFG in turn is alleged to be the owner of 100% of the outstanding stock of PSC.

Consequently, viewing the office building owned by Liebau-Woodall as a potential asset of PSC's liquidation, the Trustee filed a motion to intervene in Commerce Bank's suit against Liebau-Woodall. The district court heard arguments on the motion to intervene. The court subsequently found the Trustee had presented a prima facie showing of a material interest in the office building property that might be substantially impaired or impeded if the Trustee was prevented from intervening in the suit between Liebau-Woodall and Commerce Bank.

Eventually, the Trustee filed a motion to set aside the journal entry of judgment filed on March 18, 1998, which approved the settlement reached between Liebau-Woodall and Commerce Bank. Arguments on the motion to set aside the consent judgment

were made to the district court but not to the same judge who entered the judgment.

In denying the motion to set aside the consent judgment, the district judge held:

"Now, I'm not getting—a little more specific working backwards, I'll find that there is an insufficient showing with respect to collusion. I will find that with respect to the issues raised by the petition of Commerce Bank and settled in the journal entry of judgment filed and entered March 18 I do not find that Mr. Connell as trustee or the creditors who are represented by him are indispensable or indispensably necessary parties under the statutes that you have cited.

"I'll also find that based upon my understanding of the law that you have an opportunity to assert the trustee's claims in a foreclosure action. By not setting aside the March 18 judgment it seems to me that the only prejudice to Mr. Connell as trustee is the establishment of the date of the equitable mortgage.

"Well, if we're proceeding under bankruptcy rules, I suppose that there is potential prejudice from the standpoint of no—rattling around in the back of my mind is the special position that a trustee in bankruptcy has in relation to all other creditors, and I forget the terminology. It's been a long time since I've been called upon to think of it and use it but it's that extra special quality that a trustee in bankruptcy has. . . .

"Yes, yes. And I can see some potential prejudice there, but there is a basis for that date of July 1, 1992 and I'm satisfied that the judgment should remain and not be voided and for that reason I will deny Mr. Connell's motion as trustee."

Dissatisfied with the district court's ruling, the Trustee removed the case to the United States Bankruptcy Court for the District of Kansas and filed a motion to reconsider. The bankruptcy court remanded the case to state court, concluding that the present matter is not a "pending claim or cause of action" within the meaning of the applicable removal statute. The bankruptcy court further emphasized that sound judicial policy prevents a federal court from reconsidering a decision by a state court, including federal-state court comity and prevention of forum shopping.

Eventually, the Trustee refiled the motion to reconsider in the district court, which heard arguments on November 23, 1999. The court reaffirmed its denial of the motion to set aside the consent judgment, and the Trustee perfected this appeal.

### The Consent judgment

The primary focus of the Trustee's appeal has been the claim

the district court erred in overruling a previous finding the Trustee is an indispensable party in Commerce Bank's suit against Liebau-Woodall.

K.S.A. 60-219 establishes the parameters of compulsory joinder of parties. Following the guidance set by the Federal Rules of Civil Procedure, the Kansas rules abrogated the distinction between necessary and indispensable parties, opting for the term "contingently necessary." See *Froelich v. Werbin*, 212 Kan. 119, 121, 509 P.2d 1118 (1973).

A contingently necessary party is one without whom the parties already named to the action cannot obtain complete relief or one who claims an interest in the subject matter of the suit which is so interrelated that failure to include the nonparty will impair or impede the nonparty's ability to protect that interest or will subject an existing party to double or multiple liability or inconsistent obligations related to that interest. See K.S.A. 60-219(a).

If the district court determines that a nonparty is a contingently necessary party but cannot join the nonparty because the court lacks personal jurisdiction or proper venue or because joining the party would destroy the court's jurisdiction over the subject matter, the court must apply K.S.A. 60-219(b) to determine whether the original suit must be dismissed. See *Greenwood v. McDonough Power Equipment, Inc.*, 437 F. Supp. 707, 709-10 (D. Kan. 1977); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1607 (1986).

The factors a court must consider in determining whether a suit must be dismissed under K.S.A. 60-219(b) include: (1) the extent to which a judgment rendered in the nonparty's absence might prejudice the right of the nonparty or the existing parties; (2) the extent to which such prejudice may be lessened or avoided by shaping the judgment or relief granted; (3) the adequacy of any judgment rendered without the nonparty; and (4) whether dismissal of the suit would leave the present plaintiff without an effective remedy. See K.S.A. 60-219(b).

In the present action, the subject matter of dispute relates to the office building located at 154 North Topeka, Wichita, Kansas. The parties stipulate that the building is wholly owned by Liebau-

Woodall. Additionally, this record shows the Trustee is responsible solely for the liquidation of PSC. As such, the Trustee has an interest in the Commerce Bank suit against Liebau-Woodall only to the extent that Liebau-Woodall's property is interrelated with PSC's.

The Trustee argues that Liebau-Woodall and PSC are related through the bankruptcy theory of "substantive consolidation." In *In re Circle Land and Cattle Corp.*, 213 Bankr. 870 (Bankr. D. Kan. 1997), the bankruptcy court considered the application of a substantive consolidation claim to pull the assets of an alleged corporate alter ego into the bankruptcy estate. The *Circle Land* court recognized the substantive consolidation doctrine but declined to apply such doctrine under the circumstances presented there.

The *Circle Land* decision suggests that substantive consolidation is rarely proper unless the party seeking the consolidation can demonstrate that no creditor will be harmed by the consolidation. 213 Bankr. at 875-76.

Whether the Trustee has alleged sufficient equitable claims to support the imposition of substantive consolidation in a bankruptcy proceeding, however, is not for this court to decide. Substantive consolidation is clearly an equitable remedy applied by bankruptcy courts in reaching distributive fairness to all creditors concerned. See *Circle Land*, 213 Bankr. at 874-75. The sole issue presently pending before this court concerns the right of the Trustee to challenge a state court judgment as void for lack of a contingently necessary party. This is a question of law, requiring the application of legal principles.

To that end, Kansas courts have recognized that legally separate business organizations may be merely alter egos for a common entity. See *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 680, 896 P.2d 1012 (1995). The determination of an organization's legal status under the alter ego doctrine is a question of fact. 257 Kan. at 682. To guide the factfinder in this determination, Kansas law provides 10 factors to assess the unity of interest of separate legal entities:

"(1) whether the parent [organization] owns all or a majority of the capital stock of the subsidiary; (2) whether the [organization] have common directors or offi-

cers; (3) whether the parent [organization] finances the subsidiary; (4) whether the parent [organization] subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation; (5) whether the subsidiary has grossly inadequate capital; (6) whether the parent [organization] pays the salaries or expenses or losses of the subsidiary; (7) whether the subsidiary has substantially no business except with the parent [organization], or no assets except those conveyed to it by the parent [organization]; (8) whether in the papers of the parent [organization], and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent [organization]; and (10) whether the formal legal requirements of the subsidiary as a separate and independent [organization] are not observed." 257 Kan. at 683 (citing *Schmid v. Roehm GmbH,* 544 F. Supp. 272, 275 [D. Kan. 1982]).

Although the Trustee alleged many of the above factors in the motion to set aside the March 18, 1998, journal entry, the record arguably contains no evidence supporting any of these claims. Unquestionably, however, the district court's finding the Trustee was not an indispensable party within the meaning of K.S.A. 60-219 left no opportunity for the Trustee to present evidence in support of the alter ego theory. As such, we conclude the district court's denial of the motion to set aside the consent judgment does not support a presumption the district court found the facts necessary to support the judgment, and the case must be remanded for additional factual findings. See *In re Estate of Cline,* 258 Kan. 196, 205-06, 898 P.2d 643 (1995).

In response to the veil-piercing or substantive consolidation arguments posed by the Trustee, Commerce Bank argues that the alter ego theory is not available to a corporation to pierce its own corporate veil. Commerce Bank's position misstates the status of Kansas veil-piercing law. Under Kansas law, a corporate entity cannot apply the alter ego doctrine as a sword to vindicate its own interests. The veil-piercing concept is to be used solely to avoid potential injury to third parties by perpetuating fraud, illegality, or injustice worked through the legal fiction of a corporate identity. See *Pemco, Inc. v. Kansas Dept. of Revenue,* 258 Kan. 717, 723, 907 P.2d 863 (1995). If, indeed, the alter ego theory is to be applied in this case to reach the assets of Liebau-Woodall, it is applied to

protect the interest of third-party creditors, not the interests of the debtor corporation.

Assuming, without deciding, the alter ego theory is applicable in this case, the office building clearly becomes an asset of the liquidation estate. Under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78fff-1(a) (1994), the Trustee in a liquidation proceeding under the Act is vested with the powers of a trustee in bankruptcy. Furthermore, a liquidation proceeding is to be conducted in the same manner as a bankruptcy proceeding. 15 U.S.C. § 78fff. As such, an equitable mortgage placed on the property would prejudice the other creditors of the estate to the extent that it places the debenture security holders in a position of priority. See Bankruptcy Code, 11 U.S.C. § 506(a) (1994).

Consequently, as to the Commerce Bank action against Liebau-Woodall, the Trustee might be a nonparty whose interests in the subject matter of the suit will be impaired if not permitted to join the action. In other words, the Trustee is possibly a contingently necessary party to Commerce Bank's suit against Liebau-Woodall, depending upon the determination of the alter ego status Liebau-Woodall bears with respect to PSC.

Moreover, on remand if the district court finds the office building is an asset of the liquidation estate because of the application of the alter ego doctrine, the original consent judgment may be avoided under the automatic stay provisions of the Securities Investor Protection Act. Section 78eee(b)(2)(B)(i) imposes a stay upon "any pending bankruptcy, mortgage foreclosure, equity receivership, or other proceeding to reorganize, conserve, or liquidate the debtor or its property and any other suit against any receiver, conservator, or trustee of the debtor or its property, and shall continue such stay upon appointment of a trustee pursuant to paragraph (3)." The stay becomes effective upon the filing of the application for the protective decree. See 15 U.S.C. § 78eee(b)(2)(B).

Furthermore, the liquidation estate for the purposes of the Securities Investor Protection Act encompasses all of the debtor's assets as of the date of the application. 15 U.S.C. § 78fff(b) (1994); 11 U.S.C. § 541(a)(1) (1994). As a result, the office building is

conceivably an asset within the liquidation estate as of the date of the filing of the liquidation proceedings, *i.e.*, January 9, 1998. Because the consent judgment was not entered until March 18, 1998, in violation of the automatic stay, the Trustee may avoid the judgment under the powers awarded a liquidation proceeding under the Securities Investor Protection Act. 15 U.S.C. § 78fff(b); 11 U.S.C. § 549(a) (1994).

Consequently, we remand this cause to the district court to determine if PSC is a mere alter ego of Liebau-Woodall and the effect that finding has upon the consent judgment, consistent with the opinion of this court.

## Equitable Mortgage

The Trustee argues the district court improperly imposed an equitable mortgage favoring Commerce Bank upon the office building. In light of the foregoing analysis, this issue is moot.

If, upon remand, the district court determines that Liebau-Woodall is a mere alter ego of PSC (or vice versa), the consent judgment granting the equitable mortgage is either void or voidable at the will of the Trustee.

If, on the other hand, the district court finds no facts supporting the Trustee's veil-piercing theory, PSC and Liebau-Woodall are separate legal entities and the Trustee has no standing to challenge the district court's determination with respect to Liebau-Woodall's assets.

This court refuses to address a question of law which would amount to an advisory opinion. See *Shanks v. Nelson*, 258 Kan. 688, 692, 907 P.2d 882 (1995) (citing *Hannon v. Maynard*, 3 Kan. App. 2d 522, 597 P.2d 1125 [1979]). Accordingly, we need not consider whether the district court properly imposed an equitable mortgage on the office building located at 154 North Topeka, Wichita, Kansas.

Reversed and remanded for further proceedings.