(174 P.3d 924)
No. 97,102

WILLIAM W. DEXTER, TRUSTEE OF THE WILLIAM WAYNE DEXTER REVOCABLE TRUST UTA DATED MARCH 31, 1999, *et al.*, *Appellees/Cross-appellants*, v. JOE F. BRAKE AND B. EUGENE BLANKINSHIP, *Appellants/Cross-appellees*.

1006

Opinion filed January 25, 2008.

*William A. Taylor, III*, of Taylor, Krusor & Passiglia, LLP, of Winfield, for appellants/cross-appellees.

*John R. Horst*, of John R. Horst, P.A., of Caney, for appellees/cross-appellants.

Before RULON, C.J., GREENE, J., and BRAZIL, S.J.

GREENE, J.: Joe F. Brake (operator) and B. Eugene Blankinship (collectively Lessees), lessees of an oil and gas lease covering two tracts in Chautauqua County, appeal the district court's summary judgment cancelling their lease in favor of William W. Dexter and Margaret Jane Dexter (as trustees of revocable trusts) and Kenneth W. Nelson and Helen O. Nelson (collectively Lessors), to the extent of their interests. Brake and Blankinship argue the court erred in refusing to dismiss the action for failure to join necessary parties and in cancelling the lease. Lessors cross-appeal, arguing the court erred in refusing to award them attorney fees. We affirm the district court.

### *Factual and Procedural Background*

In 1964, R.A. Osborn executed an oil and gas lease covering a single tract of 520 acres in Chautauqua County. In 2004 when this litigation was initiated, the Lessees' interest was owned 92% by Brake and 8% by Blankinship. The 520 acres covered by the lease were subject to divided ownership as follows:

TRACT #1: the south 240 acres, with surface ownership in the Dexters' revocable trusts, but minerals owned 50% by the Dexters and 50% by Terry Gene Monroe and Lela Mae Monroe, who reserved this ½ mineral interest in a deed to the Dexters in 1993.

TRACT #2: the north 280 acres, with surface and mineral ownership in the Nelsons, but subject to one half of landowners' royalty as a nonparticipating royalty interest, reserved by the Monroes in a deed to the Nelsons' predecessor in interest.

The terms of the original oil and gas lease are not material to the issues framed in this litigation because an addendum to the lease was executed by the parties after a 2002 fire damaged the operating equipment and caused a cessation of production. The addendum, executed in February 2004 by all the parties, including the Monroes, contained express covenants that are at the heart of the litigation. These covenants include:

"1. Lessee shall place the lease into production within 60 days after February 1, 2004;

"2. Lessee place the gas well into production within 120 days of February 1, 2004 or plug it;

"3. Lessee clean up and remove (not bury on the landowner's property) all leasehold equipment not actually used in the operation of the lease within 120 days of February 1, 2004;

"4. Lessee construct the 'new/replacement' tank battery facility in accordance with an SPCC Plan; that he furnish berm material from outside the lease property and not use soil from the leasehold premises; and that he furnish a copy of that plan to the landowners;

"5. Lessee back fill all open pits presently existing within 60 days of date of ratification;

"6. Lessee properly maintain roads, gates and entrances to the lease and that he not use dirt or other materials from the property for construction of roads or stream crossings without prior written approval of the landowners;

. . . .

"9. Lessee efficiently operate the lease as a prudent operator would do under like circumstances; that equipment be repaired and maintained in a diligent and workmanlike manner; and that no salt water, oil or other substance be allowed to accumulate and remain in overflow pits, dikes or containment areas."

The addendum also provided that "[f]ailure to comply with each of the conditions above set forth will result in termination of the oil and gas lease."

In July 2004, the Dexters and Nelsons filed suit to cancel the lease, alleging breach of the covenants contained in the addendum; the Monroes were not joined as parties. Brake and Blankinship answered contending they had expended significant amounts of money and time to bring the leasehold back into production and had otherwise complied with the addendum and original lease; they did not assert as a defense that necessary parties were not joined, nor did they affirmatively seek to join the Monroes.

In early 2006, competing motions for summary judgment were filed, Lessors claiming that the lease should be cancelled for breach of the addendum covenants and Lessees claiming the suit should be dismissed for failure to join necessary parties. Notably, Lessees did not respond to Lessors' statement of 41 uncontroverted facts as required by Supreme Court Rule 141(b) (2007 Kan. Ct. R. Annot. 218), and these facts contained unequivocal statements showing breach of the addendum covenants.

The district court, based on the uncontroverted facts, granted plaintiffs' motion for summary judgment. The court concluded the facts established the breach of the terms and provisions of the addendum and, hence, resulted "in the termination of the oil and gas lease." Although the court acknowledged Lessees' arguments that they had "substantially complied" with the addendum and that the Monroes were necessary and indispensable parties to the suit, it found "the actions of the [lessees did] not constitute substantial performance" and concluded the Monroes were not necessary parties to the cancellation action. The lease was ordered cancelled *to the extent of* both the Dexters' and Nelsons' interests.

The Dexters timely filed a motion to alter or amend the decision to allow attorney fees under K.S.A. 55-202. After a hearing on the motion, the court denied this motion. Lessees filed a timely notice of appeal, and Lessors filed a timely notice of cross-appeal.

### *Standard of Review*

To the extent this appeal requires that we review the district court's summary judgments, we apply the well-established standards. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

To the extent this appeal requires that we review the district court's refusal to award attorney fees under a statutory provision, we review the decision under an abuse of discretion standard. *Tyler*

*v. Employers Mut. Cas. Co.*, 274 Kan. 227, 242, 49 P.3d 511 (2002). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006).

### *Did the District Court Err in Refusing to Grant Lessees' Motion for Summary Judgment Based on Failure to Join Necessary Parties?*

Lessees initially argue on appeal that the district court erred in overruling their motion for summary judgment seeking dismissal due to Lessors' failure to join contingently necessary parties. The fundamental question is whether the Monroes' undivided mineral interest in tract #1 or their nonparticipating royalty interest in tract #2 caused them to be contingently necessary parties who should have been joined in the action for cancellation of the lease.

On this question, the district judge concluded: "Terry G. Monroe and/or others, as owners of the 'Monroe interests' are not necessary or indispensable parties to this action," reasoning from the bench, "I think it's important that we try to resolve this issue for the Dexters, and I think that we can work around the issues of the Monroes."

In Kansas, whether the joinder of persons is required for just adjudication of an action is generally governed by K.S.A. 60-219, which states:

"A person is contingently necessary if (1) complete relief cannot be accorded in his absence among those already parties, or (2) he claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action in his absence may (I) as a practical matter substantially impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Neither party cited this statute on appeal, but we must ultimately determine whether the Monroes are contingently necessary parties based upon this statutory criteria. See *Commerce Bank, N.A. v.*

*Liebau-Woodall & Assocs., L.P.*, 28 Kan. App. 2d 674, Syl. ¶¶ 1-3, 20 P.3d 88, *rev. denied* 271 Kan. 1036 (2001). Following placement of this appeal on the court's calendar, we issued an order suggesting supplemental briefing on the application of K.S.A. 60-219, and both parties filed such a brief.

The precise questions framed in this appeal are surprisingly complex and have divided legal authorities both within and among various jurisdictions. At the outset we examine Lessees' argument that we recognize the following general rule:

> "In an action for cancellation of an instrument all persons whose rights or interests will be affected by the cancellation are proper and necessary parties and indispensable, unless the rights of those before the court are completely separable from the rights of those absent." 13 Am. Jur. 2d, Cancellation of Instruments, § 48 (necessary parties).

See *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, 168 Kan. 259, 212 P.2d 348 (1949).

We do not necessarily reject this rule, but we note that it is not coextensive with the criteria of K.S.A. 60-219, and we conclude it fails to answer the questions before us: Are the owners of an undivided ½ mineral interest and a nonparticipating royalty interest carved from the mineral interest "affected by cancellation" of an existing oil and gas lease, and are the rights of the Dexters and Nelsons "completely separable from [those] rights"?

The Monroes' undivided mineral interest in tract #1 entitles them to enter the property to explore for, develop, and produce oil and gas, or to contract with a third party to facilitate the exploration and development of oil and gas. *Compton v. Gas Co.*, 75 Kan. 572, 89 Pac. 1039 (1907). In Kansas, each cotenant of the mineral interest has an equal right to develop the mineral interest or have it developed by a third party. *Mobil Oil Corp. v. Kansas Corporation Commission*, 227 Kan. 594, 606-07, 608 P.2d 1325 (1980).

The Monroes' perpetual nonparticipating royalty interest in tract #2 entitles them to receive one-half of all royalties payable to the mineral interest, but it does not entitle them to participate in the exploration or development of that interest. See *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 133, 368 P.2d

19 (1962); contrast *Skelly Oil Co. v. Cities Service Oil Co.*, 160 Kan. 226, 160 P.2d 246 (1945).

## Examination of Lessors' Authorities

Lessors urge us to adopt the solution proposed by an authoritative treatise on oil and gas as to each of the Monroes' interests. As to the Monroes' perpetual undivided mineral interest, the treatise reports and proposes they are not necessary or indispensable parties.

"The authorities are nearly unanimous that a cotenant owning a perpetual mineral interest subject to a lease is not an indispensable or necessary party to a suit by other cotenants to cancel the lease as to the latters' undivided interests. It is said that a decree of cancellation covering only the plaintiffs' interest will not adversely affect the absent cotenant. This statement is not entirely correct; it would be more accurate to say that the decree of cancellation does not have such an adverse effect on the absentee that his presence in court is required.

"The cancellation of a lease as to an undivided interest in the mineral deprives the lessee, of course, of the exclusive operating rights in the land. In most states, this means that the lessee may continue to operate, but must share the profit from production with the cotenants not subject to the lease. It further means that the lessee takes the full risk of any additional drilling operations. . . . Thus, the adverse effect on the absent cotenant of cancelling a lease as to plaintiff's undivided interest is the inhibiting effect such cancellation has on further drilling operations by the lessee.

"As noted, most courts have not considered this consequence sufficiently serious to require bringing the cotenant into the suit. We believe this position is sound." 5 Williams & Myers, Oil and Gas Law § 877.3 (2007) (citing *Thiessen v. Weber*, 128 Kan. 556, 278 Pac. 770 [1929], and *Skelly Oil Co. v. Wickham*, 202 F.2d 442 [10th Cir. 1953]).

As to the Monroes' perpetual nonparticipating royalty interest, the authorities appear to be far more divided, but the treatise urges the view that "the owner of a perpetual nonparticipating royalty or nonexecutive mineral interest is not a necessary or indispensable party to an action to cancel the lease, in whole or in part, for breach of implied covenants." 5 Williams & Myers, Oil and Gas Law § 877.4 (2007). This view is based upon the following rationale:

"It is difficult to see how the absence of such person affects the lessee. Since the cancellation decree terminates the lease as to both lessor and royalty owner, there is no danger of multiple litigation or of inconsistent judgments on the cancellation issue. Nor does the absence of the royalty owner create the risk of the court's

rendering a hollow judgment: the royalty owner is bound by the decision on cancellation.

. . . .

". . . Is the royalty owner so adversely affected by a judgment of cancellation that justice requires him to be given notice of the suit and an opportunity to participate? There is little or no adverse effect on a perpetual nonparticipating royalty owner or nonexecutive mineral owner from the cancellation of a lease for breach of covenant. The nonparticipating interest remains intact; when and if a new lease is executed and production obtained, the nonparticipating owner will share in production. Whatever risk the nonparticipating royalty owner is exposed to stems from the power of the executive to improperly exercise the exclusive leasing power. Ordinarily, the self-interest of the executive is sufficient safeguard. When it is not, a duty of fair-dealing protects the nonparticipating owner. Since the royalty owner is in precisely the same position after cancellation of the lease as he was before the lease was executed, he should not be regarded as either a necessary or indispensable party."

### Examination of Lessees' Authorities

In contrast to this treatise authority, Lessees urge us to examine two Kansas cases and two federal cases they contend apply Kansas law and reach the conclusion that the Monroes are contingently necessary parties to this action.

In the *Toklan* cases, owners of approximately 60% of oil and gas leases covering 3200 acres sought to cancel a gas purchase contract with Panhandle Eastern Pipeline Company encompassing 6400 acres, alleging breach of the contract. In the first *Toklan* case, our Supreme Court held that the owners of the other 40% of the lessee interests in the 3200 acres were necessary and indispensable parties to the cancellation action. *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, 168 Kan. 259, 212 P.2d 348 (1949). In the second *Toklan* case, those owners of the 40% lessee interests in the same 3200 acres had been joined, but the owners of leases on the other 3200 acres encompassed by the contract were still not parties, and the Supreme Court held they were necessary and indispensable as well. *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, 172 Kan. 305, 239 P.2d 927 (1952). This situation must be distinguished from that before us; here we are not addressing the rights of other lessees of acreage encompassed by the same gas purchase contract sought to be cancelled but rather ab-

sentee owners of interests carved from Lessors' interest in properties covered by the same oil and gas lease sought to be cancelled. All owners of the lessee interest in that oil and gas lease are before the court, and the joinder considerations discussed in the *Toklan* cases are simply inapplicable.

In the first of the federal cases, the plaintiff/owner of exclusive rights to gas in the Chase zone sued the defendant/operator of rights to produce gas from the Council Grove zone, some 100 to 200 hundred feet below the Chase, alleging the defendant had illegally perforated some or all of its eight wells in the Chase and were extracting gas belonging to plaintiff. Defendant moved to dismiss for failure to join other interest owners in the subject well, presumably other owners of the working interest. The court noted the operator's interest was on average less than 50% in the wells and did "not equate" with that of the absent joint venturers. Accordingly, the court found the absent interest owners were indispensable parties and dismissed the action. *Cross Timbers Oil Co. v. Rosel Energy, Inc.*, 167 F.R.D. 457 (D. Kan. 1996). This situation must be distinguished from that before us; here we are not addressing the rights of coowners of a leasehold interest but rather absentee owners of interests carved from Lessors' interests in the properties. The effect of the litigation on both parties and absent parties was entirely different in *Cross Timbers* and thus drove a different result.

In the second of the federal cases, the lessee of certain oil and gas leases sought to quiet title on the leases as against others who held new leases covering the same acreage, but failed to join "the landowner-lessors whose lands are covered by the old and new leases and the numerous owners of these leasehold estates, as lessees under the old and new leases." *Hugoton Energy Corp. v. Plains Resources, Inc.*, 141 F.R.D. 320, 321 (D. Kan. 1991). Concluding the absent parties "have a vital stake in the outcome of this action," the court held that the absent landowners and leaseholders were necessary parties and dismissed the action. 141 F.R.D. at 322. Again, this situation must be distinguished from that before us; here we have no competing leasehold interests but rather absentee

owners of interests carved from the Lessors' interests and covered by only a single leasehold.

## Statutory Analysis

Having examined the authorities urged by the parties, we return to the statutory criteria to determine contingently necessary parties.

### Can complete relief be accorded to those already parties in the absence of the Monroes?

The Dexters explain the result of cancellation to the extent of the Lessors' interests as follows:

As to the Dexters' tract #1:

"Upon cancellation, Monroes will continue to be entitled to receive one-half of the original one-eighth landowner's royalty ($\frac{1}{16}$th). Defendants will continue to be entitled to operate the lease and receive $\frac{7}{16}$ths of the proceeds of oil or gas sold, subject to their proportionate part of the operating expenses ($\frac{7}{15}$ths); Dexters will be entitled to one half of the proceeds of oil or gas produced, subject to their proportionate part of the operating expenses ($\frac{8}{15}$ths)."

As to the Nelsons' tract #2:

"Cancellation of the oil and gas lease will not extinguish the perpetual non-participating royalty interest of Monroes in that tract. In the event Nelson re-lease their tract for future oil and gas production, Monroes will be entitled to receive one-half of whatever the landowner's royalty is that Nelsons contract for."

Clearly, both the Dexters and the Nelsons are generally not deprived of relief because they can have the lease cancelled as to their interests. As one court explained the outcome in addressing similar facts:

"The judgment adjudicated that the oil and gas lease had terminated only with respect to the separate and distinct interests of the plaintiffs. It in no wise undertook to adjudicate the rights of Skelly under its oil and gas lease with respect to the other owners of undivided interests. The rights of such other owners were wholly unaffected by the judgment." *Skelly Oil Co. v. Wickham*, 202 F.2d 442 (10th Cir. 1953).

Lease cancellation as to their interest only is particularly complete for the Nelsons, who are entitled to full cessation of operations by Lessees, and who have no impairment to the further ex-

ploration and development for minerals on their property. This relief is somewhat less complete for the Dexters, who have no impediment to further exploration and development of their mineral interest, but who must potentially tolerate the continuing presence of Lessees on the surface of their land to the extent necessary for development of the Monroes' mineral interest. See *Krug v. Krug*, 5 Kan. App. 2d 426, 618 P.2d 323 (1980); see also 2 Williams & Myers, Oil and Gas Law § 502 *et seq.* (concurrent interests). Does this deny them complete relief for purposes of K.S.A. 60-219?

Given the burden on the Lessees of continued operations for the Monroes' mineral interest, it is not likely that this surface impairment on the Dexters' tract will persist as a practical matter; if it does persist, the Dexters may seek partition of their interest and unify their ownership by a successful bid at partition sale. See *Holland v. Shaffer*, 162 Kan. 474, 178 P.2d 235 (1947) (Ordinarily, the right to partition mineral interests is considered an incident of common ownership.). We adopt the rationale of Williams & Myers, who argue that the absent cotenant need not be joined under these circumstances:

"First, the land may be subject to partition, after which the lessee again has the exclusive operating interest in the portion of the land subject to the lease. Second, for the lessee to be held liable to one cotenant for breach of implied covenant requires a finding that the operator was derelict in his operations on the land and suggests that further drilling operations were not in his contemplation. Third, anyone who owns or buys an undivided interest in minerals must be aware of the risk that the lease may terminate, that agreement among the cotenants on a new lease may not be reached, and that drilling operations may therefore be inhibited by the inability of an operator to obtain exclusive operating rights in the land." 5 Williams & Myers, Oil and Gas Law § 877.3.

The practical problems resulting from cancellation only to the extent of the Dexters' ownership, however, are not the result of the absence of the Monroes in the action for cancellation so much as they are inherent in common ownership of the minerals—a circumstance extant when all of these parties gained their relative interests in the property. Moreover, the only hardship of the available relief is on the Dexters, and they urge the court to proceed

without their cotenant in the minerals. We conclude that "complete relief" can indeed be accorded absent the Monroes.

### Do the Monroes claim an interest relating to the property or transaction which is the subject of the action?

The "subject of the action" is Lessees' oil and gas lease; as to their mineral interest in tract #1, the Monroes clearly claim a direct interest as a successor to the original lessor and, as to their nonparticipating royalty interest in tract #2, they have an indirect interest in continuing royalty payments.

### Are the Monroes so situated that the disposition of the action in their absence may as a practical matter substantially impair or impede their ability to protect that interest?

As to the Dexter property (tract #1), the Monroes are not so situated that the disposition of the action in their absence may as a practical matter substantially impair or impede their ability to protect that interest. There is no impediment to a subsequent action by the Monroes to seek cancellation of the lease to the extent of their interest if they become disenchanted with the operations of the current lessees. As to the Nelson property (tract #2), we agree with Williams & Myers, who note that a perpetual nonparticipating royalty interest "remains intact" and that the interest owner is "in precisely the same position after cancellation of the lease as [they were] before the lease was executed." 5 Williams & Myers, Oil and Gas Law § 877.4 (2007).

### Does the absence of the Monroes leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of their absence?

The absence of the Monroes certainly does not leave either the Nelsons or the Dexters subject to any risk of double, multiple, or inconsistent obligations; the lease is cancelled as to their respective interests, and their "obligations" under the lease are at an end. As to Lessees and their remaining "obligations" under the lease, the question is somewhat more complex.

First, as to the Nelson tract, there is no risk to Lessees of double, multiple, or inconsistent obligations because cancellation finalizes the entirety of the lessee-lessor relationship among these parties and there is no possibility of further "obligations" by reason of the oil and gas lease.

As to the Dexter tract, there is the clear risk of impairment to the Lessees' revenue interest by reason of the cancellation to the extent of the Dexters' interest, but the absence of the Monroes does not leave Lessees subject to any obligations that were not already inherent in operating the lease on the tract with divided minerals. The partial cancellation theoretically allows the Lessees to continue operations of the lease, but their obligations thereunder are not doubled or multiplied by reason of a partial cancellation. Is there a risk they may be subjected to *inconsistent* obligations? Continuation of operations poses no risk of inconsistency. In the event of a subsequent cancellation suit by the Monroes, Lessees may be compelled to once again defend their interest, but we foresee no possibility of inconsistent obligations; either the court will cancel the lease as to the Monroes' interest, or it will permit continued operations under the lease. Neither scenario would incur obligations inconsistent with the decree in the present action; cancellation in the second action would be theoretically consistent with the decree of partial cancellation in the first action, but refusal to cancel as to the Monroes' interest would be consistent with the outcome of the first action.

Leasehold operations on tracts with divided minerals inherently pose more obligations than operations on tracts with unified mineral ownership; we conclude that the risk of double, multiple, or inconsistent obligations by reason of the Monroes' absence from this litigation is not expanded beyond these inherent obligations. As to Lessees, there is no potential for double, multiple, or inconsistent obligations; clearly, their revenue interest may be impaired and their risks may be enhanced by a cancellation as to the Dexters' interests, but these risks are not incurred by reason of the Monroes' absence, but rather the consequences of divided mineral interests.

Having applied the statutory criteria, we conclude the Monroes were not contingently necessary parties to the lease cancellation

action, adopting in large part the rationale of Williams & Myers. The district court did not err in refusing to dismiss the action by reason of the absence of the Monroes; given the nature of the interests they owned, the Monroes were not contingently necessary to the cancellation action.

### *Did the District Court Err*
### *in Granting Summary Judgment for Lessors,*
### *thus Cancelling the Oil and Gas Lease as to Them?*

Lessees next argue the district court erred in holding the leases should be cancelled for breach of the covenants contained in the addendum. They contend that their significant effort and expenditures on the leasehold constituted substantial performance of the covenants, and they were—at a minimum—entitled to a trial on this issue. We disagree.

Lessors' motion for summary judgment set forth as uncontroverted facts that Brake had breached the covenants numbered 2 and 8 above, and at no time, either within or outside of the 21-day period for response did Lessees attempt to controvert these facts. Accordingly, these facts must be deemed admitted. See K.S.A. 60-256; Supreme Court Rule 141 (2007 Kan. Ct. R. Annot. 218). Inasmuch as Lessees breached express covenants in the addendum and the addendum expressly provided that breach would result in termination, we must affirm the district court's conclusion that the oil and gas lease should be cancelled to the extent of the parties' interests.

Lessees argued in district court and now argue on appeal that they substantially performed the covenants at issue and "are entitled at a minimum to the right to a trial of this case on its merits so they can set forth in great detail their efforts to comply with the Addendum." It is elementary that *any* performance excusing breach of the covenants alleged to have been breached in Lessors' summary judgment motion should have been set forth by Lessees in response to the uncontroverted facts. Lessees essentially admitted breach of the covenants by reason of their silence, and they cannot now be heard to complain of this consequence. Supreme Court Rule 141 (2007 Kan. Ct. R. Annot. 218); see K.S.A. 60-

256(e); *Money v. Ft. Hays State Univ. Endowment Ass'n*, 31 Kan. App. 2d 322, Syl. ¶ 2, 64 P.3d 458, *rev. denied* 276 Kan. 969 (2003).

The district court did not err in granting summary judgment in favor of Lessors, cancelling the oil and gas lease as to the Dexters and Nelsons.

### Did the District Court Err in Denying the Dexters' Motion for an Award of Attorney Fees?

Lessors abandoned their request for attorney fees at the hearing on the summary judgment motions, with counsel stating, "I would like to withdraw that request, at this time. I think there is some problem with it, and so we are not requesting allowance for attorney fees." After the ruling on the summary judgment motions, Lessors filed a motion to alter or amend judgment pursuant to K.S.A. 60-259 seeking an award of attorney fees under K.S.A. 55-202. The district court determined it could consider the question under 60-259 but denied the motion.

K.S.A. 55-202 provides:

"Should the owner of such lease neglect or refuse to execute a release as provided by this act, then the owner of the leased premises may sue in any court of competent jurisdiction to obtain such release, and the owner may also recover in such action of the lessee, his or her successors or assigns, the sum of one hundred dollars as damages, and all costs, together with a reasonable attorney's fee for preparing and prosecuting the suit, and he or she may also recover any additional damages that the evidence in the case will warrant. In all such actions, writs of attachment may issue as in other case."

We note at the outset that the provision authorizes the award of attorney fees by its language of "may also recover" but there is no mandatory aspect of this provision. Accordingly, the district court has discretion to award fees, and we review that decision for an abuse of discretion.

Although Lessors contend on appeal the district court abused its discretion in failing to evaluate and address the appropriate factors to determine an award of attorney fees under the statute, we disagree. We simply cannot conclude that no reasonable person would have denied the fee request under these circumstances.

Affirmed.